FREDDY PEGUERO y OTROS, demandantes y recurridos, *v.* WILLIAM HERNÁNDEZ PELLOT, ETC., demandados y peticionarios.

*Número:* CE-93-716 *Resuelto:* 14 de noviembre de 1995

488

*Luis Batista Salas*, abogado de la parte recurrente; *Mario Oronoz* y *Fernando E. Agrait* abogados de la parte recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Hoy resolvemos que una corporación foránea no se encuentra en Puerto Rico, para propósitos de hacer un diligenciamiento personal del emplazamiento —Regla 4.4(e) de Procedimiento Civil, 32 L.P.R.A. Ap. III— cuando su presidente visita la Isla en gestiones no relacionadas con dicha corporación. Además, resolvemos que, de acuerdo con las circunstancias específicas de este caso, tampoco procede el emplazamiento de la corporación no domiciliada, según permitido por la Regla 4.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Veamos los hechos.

## I

El Sr. Freddy Peguero presentó, en el Tribunal Superior, Sala de San Juan, una demanda en la que reclamó un resarcimiento en daños contra el señor William Hernández Pellot, la Sun Tech Group, S.E. y la Sun Tech Group, Inc. Alegó que, en 1989, él y el codemandado Hernández Pellot acordaron participar por partes iguales en la adquisición de una operación de procesamiento y venta de gas fluido en las Islas Vírgenes. Indicó que, luego de hacer una serie de gestiones tendentes a lograr este propósito, el codemandado Hernández Pellot, por su cuenta y no siendo cierto, notificó a las entidades que proveerían el financiamiento para el negocio que el demandante Peguero no interesaba continuar con él.[1]

---

[1] Aunque ni en la demanda ni en la demanda enmendada se especifica en cuál sucursal del Banco Popular de Puerto Rico se realizaron las gestiones prestatarias, de la transcripción de la deposición tomada al señor Hernández Pellot surge que las gestiones, tanto con el Banco como con la Administración de Pequeños Negocios, se llevaron a cabo en las Islas Vírgenes, lugar donde se incorporó Sun Tech Group, Inc.

Además, alegó que Hernández Pellot, Sun Tech Group, S.E. —una sociedad compuesta por Hernández Pellot, Carlos Vélez y Héctor Peguero— y Sun Tech Group, Inc. (Sun Tech), conspiraron para privarlo de su participación en el negocio y de las ganancias que pudo haber derivado de éste. Estimó los daños ocasionados por las actuaciones de los demandados en aproximadamente tres millones cincuenta mil dólares ($3,050,000).

En marzo de 1993, Sun Tech fue emplazada a través de su presidente, el Sr. Héctor Peguero, que en esos momentos se encontraba de visita en Puerto Rico y se hospedaba en el Hotel Ambassador en El Condado.

El 3 de junio de 1993, Sun Tech presentó una moción en la que solicitó la desestimación de la demanda por falta de jurisdicción. Indicó que era una corporación extranjera que no estaba registrada, no tenía oficina ni propiedades, no había nombrado agente ni había hecho negocios en Puerto Rico. Arguyó que la corporación no podía ser emplazada personalmente a través de su presidente y que los tribunales de Puerto Rico no tenían jurisdicción *in personam* sobre ella. Acompañó como anejos una certificación del Gobierno de las Islas Vírgenes que acreditaba que la Sun Tech era una empresa debidamente incorporada allí y una certificación negativa de la existencia corporativa de Sun Tech expedida por el Departamento de Estado del Estado Libre Asociado de Puerto Rico.

Oportunamente, la parte demandante se opuso a la moción de desestimación. Alegó que la Regla 4.7(a)(2) de Procedimiento Civil, 32 L.P.R.A. Ap. III, permite el emplazamiento de una persona sin domicilio en Puerto Rico cuando ésta hubiese "participado, por sí o por su agente, en actos tort[i]ceros dentro de Puerto Rico". Además, afirmó que Sun Tech y Sun Tech Group, S.E. habían recibido, ilegalmente, unos beneficios que le pertenecían causándole daños que se manifestaron en Puerto Rico; que Sun Tech

Group fue creada para esos propósitos, y que, junto con los otros codemandados, le era solidariamente responsable.

Finalmente, la parte demandante argumentó que Sun Tech era el *alter ego* o instrumento de Sun Tech Group, S.E.; que como sociedad radicaba en donde residen sus socios, y que uno de ellos, el codemandado Hernández Pellot, residía en Puerto Rico. Por todas estas razones, entendía que Sun Tech había sido adecuadamente emplazada, que el tribunal tenía jurisdicción sobre la misma y que procedía denegar la moción de desestimación.

En noviembre de 1993, Sun Tech presentó una moción titulada Alegación Adicional para Desestimar por Falta de Jurisdicción. Mediante una declaración jurada, el Sr. Héctor Peguero afirmó ser residente de St. Croix, Islas Vírgenes, y Presidente de Sun Tech. Declaró que la corporación estaba incorporada en las Islas Vírgenes; que ésta se dedicaba a la venta de gas propano en las Islas Vírgenes; que compraba el gas propano en St. Croix, y que no vendía, transportaba o mercadeaba su producto en otros lugares.

Basándose en estos hechos, arguyó que Sun Tech no tenía contactos mínimos suficientes con Puerto Rico y que nuestros tribunales no podían adquirir jurisdicción sobre ella. Alegó, también, que no podía emplazarse a una corporación extranjera como Sun Tech a través de su presidente mientras está visitando Puerto Rico en gestiones personales no relacionadas con la corporación.

El 18 de octubre de 1993, el tribunal denegó la solicitud de desestimación.[2] Inconforme con esta determinación, la codemandada Sun Tech presentó una petición de *certiorari*, aduciendo que el foro de instancia erró al negarse a desestimar la demanda por falta de jurisdicción sobre la persona. El 11 de febrero de 1994 emitimos una resolución,

---

[2] La Sun Tech Group, Inc., oportunamente, presentó una moción de reconsideración la cual, al momento de presentarse esta petición de *certiorari*, aún no había sido resuelta.

concediéndole un término a la parte demandante recurrida para que mostrara causa por la cual no deberíamos expedir el auto solicitado, revocar la resolución de instancia y desestimar la reclamación incoada contra Sun Tech por ésta no haber sido emplazada correctamente.

La parte demandante recurrida ha comparecido. En síntesis, expuso que la controversia real en este caso es determinar si, cometido un acto torticero en Puerto Rico, cuyo resultado fue que unos activos que debían pertenecerle quedaron en poder de una corporación creada para adquirirlos, "esa corporación está en Puerto Rico para fines jurisdiccionales con motivo de ser parte de la actuación causante de daños y perjuicios". Arguyó que el daño lo causaron solidariamente los demandados y que por éstas razones el foro de Puerto Rico tiene jurisdicción.

## II

El emplazamiento es un mecanismo procesal de honda raíz constitucional mediante el cual el tribunal adquiere jurisdicción sobre la persona del demandado.[3] El propósito del emplazamiento es notificar a una persona sobre la presentación de una acción judicial en su contra, de manera que ésta pueda, si así lo desea, comparecer para ser oída y defenderse de la reclamación en su contra. Si los requisitos establecidos por la Regla 4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, para el emplazamiento no se cumplen estrictamente, el tribunal no adquirirá jurisdicción sobre la persona del demandado. *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98–99 (1986); *Banco Metropolitano v. Berríos*, 110 D.P.R. 721 (1981). Por tal razón, para hacer una determinación sobre la validez o nulidad del proceso de empla-

---

[3] Sobre el concepto del emplazamiento, véanse: R. Hernández Colón, *Manual de Derecho Civil*, 2da ed. rev., Hato Rey, Equity Publishing Corp., 1981, pág. 141 y ss.; J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1983, Vol. II, pág. 32.

zamiento es necesario examinar tanto las normas relacionadas con la jurisdicción *in personam*, como las disposiciones técnicas de la Regla 4 de Procedimiento Civil, *supra*, sobre el emplazamiento.(⁴)

■ La cláusula de debido procedimiento de ley de la Constitución de Estados Unidos limita el poder de nuestros tribunales, así como de los tribunales de los estados de la Nación americana, para asumir jurisdicción y dictar sentencias contra personas naturales o jurídicas no domiciliadas. *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Ind. Siderúrgica v. Thyssen Steel Caribbean*, 114 D.P.R. 548, 558 (1983). Una sentencia dictada en violación a dicha cláusula no merece entera fe y crédito en ningún otro Estado.(⁵) *Ind. Siderúrgica v. Thyssen Steel Caribbean*, supra, págs. 558–559.

Con relación a la jurisdicción de un tribunal sobre una persona, el Tribunal Supremo de Estados Unidos inicialmente acogió el principio de territorialidad. Al amparo de esta doctrina, un Estado, en acciones *in rem*, tiene jurisdicción sobre los demandados si la propiedad objeto del litigio se encuentra dentro de sus fronteras. De otra parte, en acciones *in personam*, el Estado tiene jurisdicción sobre los demandados que están domiciliados en dicho Estado o que hayan sido emplazados cuando se encontraban físicamente dentro de sus límites territoriales. Esta doctrina fue esbozada en el ya clásico caso *Pennoyer v. Neff*, 95 U.S. 714 (1877). Allí se determinó que un Estado tenía autoridad y poder para emitir una sentencia en todo caso en que el

---

(⁴) Para una discusión sobre el tema de la jurisdicción *in personam*, véanse: 4 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Secs. 1063, 1064 y 1065 (1987); Cuevas Segarra, *op. cit.*, págs. 10–13 (Sup. 1990-1991).

(⁵) Entre los casos más importantes sobre jurisdicción *in personam*, véanse: *Pennoyer v. Neff*, 95 U.S. 714 (1877); *Internat. Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Shaffer v. Heitner*, 433 U.S. 186 (1977); *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984); *Helicópteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987).

demandado hubiese estado físicamente presente en la jurisdicción territorial de dicho Estado al momento de ser emplazado. El Estado también podía asumir jurisdicción sobre la persona del demandado cuando éste se sometía a la jurisdicción del tribunal, ya fuese expresa o implícitamente. *Pennoyer v. Neff*, supra, parecía indicar que la presencia del demandado en el Estado, aunque transitoria, era suficiente para que un tribunal asumiera jurisdicción sobre éste al ser debidamente emplazado dentro de sus límites territoriales. 4 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1064, págs. 231–232 (1987).

A consecuencia de la industrialización, de los adelantos tecnológicos en el área de la transportación y de las comunicaciones, así como del incremento en el comercio interestatal, el principio de territorialidad pasó a ser demasiado restrictivo como mecanismo para que los tribunales pudiesen adquirir jurisdicción sobre las personas. Por lo tanto, los tribunales, tanto federales como estatales, comenzaron a desarrollar distintas teorías para liberalizar su jurisdicción sobre los no domiciliados. El Tribunal Supremo federal, sin revocar a *Pennoyer v. Neff*, supra, comenzó a reformular y a ampliar la doctrina de territorialidad con relación a las acciones *in personam*. Véanse, por ejemplo, los casos *Kane v. New Jersey*, 242 U.S. 160 (1916), y *Hess v. Pawlosky*, 274 U.S. 352 (1927).

En lo que respecta a las corporaciones, el Tribunal Supremo federal también se vio precisado a revisar su posición, en tanto y en cuanto ésta circunscribía el domicilio de las corporaciones al Estado de incorporación y, por ende, bajo el principio de territorialidad, la jurisdicción *in personam* sobre éstas estaba limitada a dicho Estado. *Bank of Augusta v. Earle*, 38 U.S. 517, 588 (1839). Como mecanismo para ampliar esta norma se desarrolló la teoría del consentimiento, la cual establecía que una corporación foránea sólo podía realizar negocios en un Estado cuando

éste así lo autorizaba. Bajo esta teoría los Estados, como una condición para hacer negocios en su jurisdicción, podían requerirle a la corporación su consentimiento para ser emplazada a través de un agente. Ley de Corporaciones Foráneas, Art. 1404 (14 L.P.R.A. sec. 2404); *Riego Zúñiga v. Líneas Aéreas LACSA,* 139 D.P.R. 59 (1995).

Luego, los tribunales desarrollaron la teoría de la presencia en la localidad, cuya noción fundamental establecía que un Estado podía asumir jurisdicción sobre una corporación si por la extensión y la manera en que ésta realizaba sus actividades se podía inferir que estaba físicamente presente en el foro estatal. Mediante esta doctrina, los tribunales perdían su poder sobre el ente corporativo cuando cesaban las actividades de la corporación en el Estado. *A.H. Thomas, Co. v. Tribunal Superior*, 98 D.P.R. 883, 888–889 (1970); J.J. Cound y otros, *Civil Procedure*, Minnesota, Ed. West Publishing Co., 1993, págs. 77–78.

Con el caso de *Internat. Shoe Co. v. Washington*, supra, el Tribunal Supremo federal comenzó el desarrollo de las nociones modernas relativas a la jurisdicción de los tribunales sobre los no domiciliados en acciones *in personam*. El Tribunal determinó que para asumir jurisdicción sobre una persona natural o jurídica no domiciliada en acciones *in personam*, el debido proceso de ley requiere que la persona haya tenido contactos mínimos con el foro local y que la causa de acción surja de o esté relacionada con dichos contactos, de forma tal que no se quebranten las nociones tradicionales del juego limpio y justicia sustancial.([6]) Este caso estimuló a las Legislaturas estatales a crear nuevas leyes para emplazar y para poner en vigor la doctrina de contactos mínimos. Estas leyes se conocen como los estatutos de largo alcance (*long arm statutes*). Nuestra jurisdicción no fue la excepción.

---

([6]) En *Perkins v. Benguet Mining Co.*, 342 U.S. 437 (1952), el Tribunal Supremo federal expresó que si los negocios de una corporación extranjera son de naturaleza substancial se puede presentar una acción contra ésta aunque la causa de acción no esté relacionada con sus actividades en dicho foro.

■ Con relación a la doctrina de contactos mínimos, la Regla 4.7 de Procedimiento Civil, *supra*, enumera una serie de circunstancias en las que un tribunal podrá asumir jurisdicción sobre la persona de un no domiciliado: (1) si éste efectuó, por sí o por su agente, transacciones de negocios dentro de Puerto Rico; (2) si participó, por sí o por su agente, en actos torticeros dentro de Puerto Rico; (3) si estuvo involucrado en un accidente mientras, por sí o por su agente, manejaba un vehículo de motor en Puerto Rico; (4) si estuvo involucrado en un accidente en Puerto Rico en la operación, por sí o por su agente, de un negocio de transportación de pasajeros o carga en Puerto Rico, entre Puerto Rico y Estados Unidos o entre Puerto Rico y un país extranjero, o el accidente ocurre fuera de Puerto Rico en la operación de dicho negocio cuando el contrato se haya otorgado en Puerto Rico, o (5) si es dueño, usa o posee, por sí o por su agente, bienes inmuebles sitos en Puerto Rico.([7])

■ Acogiendo el pronunciamiento del Tribunal Supremo federal en *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), en *Ind. Siderúrgica v. Thyssen Steel Caribbean*, supra, señalamos que la doctrina de contactos mínimos tiene dos (2) propósitos: proteger al demandado de la carga que supone litigar en un foro distante o inconveniente y asegurar que los Estados, por medio de sus tribunales, no habrán de rebasar los límites que recaen sobre ellos por su condición de soberanos iguales entre sí en un sistema federal de gobierno. La relación entre el demandado y el foro debe ser de tal naturaleza que sea razonable requerirle a éste que comparezca y se defienda de la

---

([7]) La enumeración que se hace en esta regla no es exhaustiva. Podrían haber otras circunstancias que estén dentro de los parámetros constitucionales de la doctrina de contactos mínimos.

Véanse los casos *Pou v. American Motors Corp.*, 127 D.P.R. 810 (1991); *Molina v. Supermercado Amigo, Inc.*, 119 D.P.R. 330 (1987); *Ind. Siderúrgica v. Thyssen Steel Caribbean*, 114 D.P.R. 548 (1983); *Medina v. Tribunal Superior*, 104 D.P.R. 346 (1975); *A.H. Thomas, Co. v. Tribunal Superior*, 98 D.P.R. 883 (1970), y *Schwartz v. Tribl. de Distrito*, 73 D.P.R. 856 (1952), que discuten la doctrina de contactos mínimos.

acción particular incoada en dicho foro. *Ind. Siderúrgica v. Thyssen Steel Caribbean,* supra, págs. 559–560. En los casos apropiados se considerará el interés del foro local en adjudicar el litigio; el interés del demandante en obtener un remedio conveniente y efectivo; el interés del sistema judicial interestatal en lograr la más eficiente resolución de las controversias; y el interés compartido de los distintos Estados en promover políticas sociales fundamentales. *Ind. Siderúrgica v. Thyssen Steel Caribbean,* supra, pág. 560.

En cuanto al emplazamiento en sí, hemos resuelto que para que un tribunal pueda hacer efectiva su autoridad para considerar y decidir sobre un asunto, el método de notificación tiene que ofrecer una probabilidad razonable de informarle al demandado no domiciliado sobre la acción entablada en su contra, de forma tal que pueda comparecer a defenderse si así lo desea. *Pou v. American Motors Corp.,* 127 D.P.R. 810 (1991); *Granados v. Rodríguez Estrada II,* 124 D.P.R. 593 (1989); *Rodríguez v. Nasrallah,* supra.

Cuando la parte demandada es una corporación foránea *presente en Puerto Rico,* el emplazamiento podrá ser diligenciado en una persona natural que, con razonable certeza, por ser un oficial, gerente administrativo, agente general o cualquier otro agente autorizado de la corporación, por nombramiento o designado por ley para recibir emplazamiento, le haga llegar el mismo a la corporación demandada. Regla 4.4(e) de Procedimiento Civil, *supra*; *Pou v. American Motors Corp.,* supra. Cuando la corporación foránea *no está presente* en Puerto Rico o no ha designado en la Isla un agente autorizado para recibir emplazamientos, el emplazamiento se hará mediante edictos, Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, o mediante el mecanismo provisto por el Art. 1404 de la Ley de Corporaciones Foráneas, *supra*, dependiendo de las circunstancias del caso, *Pou v. American Motors Corp.,* supra.

De manera que, cuando el emplazamiento se hace en una corporación foránea no domiciliada, al amparo de la doctrina de contactos mínimos, la Regla 4.7 de Procedimiento Civil, *supra*, ordena que éste se haga siguiendo las normas del emplazamiento mediante edictos. Regla 4.5 de Procedimiento Civil, *supra*. Véase, al respecto, *Riego Zuñiga v. Líneas Aéreas LACSA*, supra.[8]

## III

Citando las expresiones del Tribunal Supremo federal en *Hanson v. Denckla*, 357 U.S. 235, 251 (1958), indicamos que es un error suponer que se vayan a abolir todos los límites sobre la jurisdicción personal que gravitan sobre los tribunales estatales. Añadimos que estos límites constituyen una garantía de inmunidad contra la litigación distante o inconveniente. *Ind. Siderúrgica v. Thyssen Steel Caribbean*, supra, pág. 562. Véanse, también: *World-Wide Volkswagen Corp. v. Woodson*, supra; *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987). Conscientes de lo antes expuesto, analizaremos la alegación de la parte demandante de que el caso *Burnham v. Superior Court of Cal., Marin County*, 495 U.S. 604 (1990), eliminó el requisito de los contactos mínimos para que los tribunales estatales puedan asumir jurisdicción sobre una corporación no domiciliada. Esto permitiría el emplazamiento personal de una corporación no domiciliada mediante la utilización de la Regla 4.4(e) de Procedimiento Civil, *supra*, o sea, a través de un oficial suyo que se encuentre en Puerto Rico aunque esté en una visita no relacionada con los asuntos de la corporación.

---

[8] La nueva Ley General de Corporaciones de 1995, Ley Núm. 144 de 10 de agosto de 1995 (14 L.P.R.A. sec. 2601 *et seq.*), establece la manera en que habrán de emplazarse las corporaciones organizadas en el Estado Libre Asociado de Puerto Rico (Art. 12.01 (14 L.P.R.A. sec. 3126)); las corporaciones foráneas autorizadas a hacer negocios en el Estado Libre Asociado (Art. 13.12 (14 L.P.R.A. sec. 3172)), y las corporaciones que hacen negocios en el Estado Libre Asociado sin obtener una autorización conforme al Art. 13.05 (14 L.P.R.A. sec. 3165) de esta ley.

En *Burnham v. Superior Court of Cal., Marin County*, supra, el Tribunal Supremo federal resolvió que la cláusula de debido proceso de ley de la Decimocuarta Enmienda de la Constitución federal, no impide que un estado asuma jurisdicción *in personam* sobre un demandado no domiciliado, si éste es emplazado personalmente mientras está dentro de la demarcación territorial del Estado donde se presentó la acción en su contra. Dennis Burnham era un residente del estado de Nueva Jersey que viajó a California para visitar a sus hijos, así como para realizar gestiones de negocio. Allí fue emplazado personalmente con una acción de divorcio. En una decisión de pluralidad, el Tribunal Supremo federal permitió al foro estatal asumir jurisdicción sobre la persona del demandado no domiciliado emplazado personalmente, aunque el motivo de su visita al Estado no estaba relacionado con la causa de acción presentada en su contra.[9]

Esta norma no es de aplicación automática a las corporaciones no domiciliadas.[10] Una corporación es

---

[9] El Tribunal, en *Burnham v. Superior Court of Cal., Marin County*, 495 U.S. 604 (1990), estuvo de acuerdo con el resultado pero no con los fundamentos. El Juez Scalia emitió una opinión a la que se unieron el Juez Presidente Rehnquist y el Juez Kennedy; el Juez White se unió al Juez Scalia solamente en las Partes I, II-A, II-B y II-C de la opinión. El Juez Brennan emitió otra opinión a la que se unieron los Jueces Marshall, Blackmun y O'Connor. El Juez Stevens emitió otra opinión concurrente, en la cual explicó que estaba de acuerdo en que procedía confirmar al foro estatal, basándose en la evidencia histórica, consideraciones de justicia y sentido común. Para una discusión sobre este caso y sus implicaciones en la doctrina de jurisdicción *in personam*, véanse: C.M. Daleiden, *The Aftermath of Burnham v. Superior Court: A New Rule of Transient Jurisdiction?*, 32 Santa Clara L. Rev. 989 (1992); S.D. Irwin, *Burnham v. Superior Court of California: The Final Word On Transient Personal Jurisdiction*, 53 Ohio St. L.J. 613 (1992); *The Future of Personal Jurisdiction: A Symposium on Burnham v. Superior Court*, 22 Rutgers L.J. 559 (1991); D.A. Mays, *Burnham v. Superior Court, The Supreme Court Agrees on Transient Jurisdiction in Practice, But Not in Theory*, 69 N.C. L. Rev. 1271 (1991); R. Laylor-Manning, *An Easy Case Makes Bad Law—Burnham v. Superior Court of California, 495 U.S. 604 (1990)*, 66 Wash. L. Rev. 623 (1991); P.C. Wilson, *A Pedigree for Due Process?*, 56 Mo. L. Rev. 353 (1991).

[10] De hecho, en la nota al calce Núm. 1 de la opinión del Juez Scalia se dice que la regla de contactos continuos y suficientes esbozada en *Perkins v. Benguet Mining Co.*, supra, pág. 440, para fundamentar la jurisdicción basada en asuntos no relacionados a la actividad en el foro, es de aplicacion únicamente a las corporaciones, "which have never fitted comfortably in a jurisdictional regime based primarily upon

una ficción jurídica creada por el Estado que podrá realizar aquellas transacciones lícitas autorizadas por ley y promover o llevar a cabo cualquier objeto o propósito legítimo al amparo de la Ley General de Corporaciones, Ley Núm. 3 de 9 de enero de 1956 (14 L.P.R.A sec. 1101 y ss.).[11] Es una persona jurídica que goza de una personalidad independiente de sus accionistas, directores y oficiales. Por ende, existen distinciones legales entre la corporación y las personas naturales que forman parte de ella. Véanse: *Srio. D.A.C.O. v. Comunidad San José, Inc.*, 130 D.P.R. 782 (1992); *Cruz v. Ramírez*, 75 D.P.R. 947 (1954); 1 *Fletcher Cyc. Corp.* Sec. 25, págs. 512–515 (Perm. ed. 1990); L.D. Solomon, D.E. Schwartz y J.D. Bauman, *Corporations: Law and Policy*, 2da ed., Minnesota, 1988, págs. 2–31.

Las corporaciones manifiestan su presencia de manera diferente a las personas naturales. Por ser ficciones legales, su presencia se manifiesta por su incorporación, de la manera que lo autoriza la ley y a través de las actividades que llevan a cabo. *Fletcher*, supra, Sec. 35, pág. 575, y Vol. 8, Sec. 4029, pág. 406. Para determinar si existe jurisdicción *in personam* sobre una corporación, es importante distinguir entre el domicilio, residencia o ciudadanía de sus accionistas y el domicilio de la corporación en sí. El factor importante es el domicilio del ente corporativo, que en términos generales y para fines jurisdiccionales puede ser el lugar donde está localizada la oficina o el lugar de negocios principal y el estado donde se incorporó.[12] *Fletcher*, supra, Vol. 1, Sec. 35, pág. 575.

---

'de facto power over the defendant's person.' *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)". *Burnham v. Superior Court of Cal., Marin County*, supra, pág. 610 esc. 1.

[11] *Cf.* Art. 1.01 de la Ley General de Corporaciones de 1995, Ley Núm. 144 de 10 de agosto de 1995 (14 L.P.R.A. sec. 2601).

[12] La clasificación de una corporación como doméstica, foránea o extranjera depende del lugar donde se creó la corporación. Denominamos "foráneas" a aquellas corporaciones organizadas con arreglo a las leyes de cualquier estado o jurisdicción de Estados Unidos; las organizadas con arreglo a las leyes de cualquier país extranjero se denominan "extranjeras", y las organizadas con arreglo a las leyes del Estado

 Debemos cobrar conciencia de que la autoridad de un tribunal sobre una corporación es un hecho distinto a la jurisdicción sobre la persona de sus accionistas, directores u oficiales. *Fletcher*, supra, Vol. 3A, Sec. 1296.10, págs. 643–654. Véanse, además: *Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613 (1er Cir. 1988); *Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1er Cir. 1980). No se puede emplazar a una corporación foránea a través de un accionista, director, oficial o agente de ésta si la causa de acción del demandante contra la corporación no está relacionada con las actividades de ésta en el foro donde se presenta la acción. La mera presencia del presidente de la corporación foránea dentro de la demarcación territorial de un Estado no equivale, por sí sola, a la presencia del ente corporativo dentro del foro. *Fletcher*, supra, Vol. 18A, Sec. 8748, pág. 127; *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516 (1922). Véase, además, *Helicópteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413 (1984). La entrega del emplazamiento al presidente de dicha corporación, mientras éste se encuentra dentro de las fronteras del Estado para propósitos no relacionados con la misma,([13]) no constituye, pues, un emplazamiento personal, Regla 4.4(e) de Procedimiento Civil, *supra*, de la corporación dentro del área territorial del Estado.([14]) *Flet-*

---

Libre Asociado son domésticas. *Pou v. American Motors Corp.*, supra. La nueva Ley General de Corporaciones de 1995 define una corporación foránea como "una corporación organizada con arreglo a las leyes de cualquier jurisdicción que no sea el Estado Libre Asociado". Art. 13.01 de la Ley Núm. 144, *supra*, 14 L.P.R.A. sec. 3161.

([13]) Por no estar ante nuestra consideración, no discutiremos la situación de si se puede o no emplazar y adquirir jurisdicción *in personam* sobre una corporación foránea que no hace negocios en Puerto Rico ni se encuentra inscrita en el Departamento de Estado, mediante la entrega del emplazamiento a su presidente mientras éste se encuentra en la Isla para propósitos relacionados con la corporación.

([14]) De hecho, al accionista, director u oficial de la corporación demandada, sólo se le podrán atribuir los contactos mínimos de ésta con el foro local si la relación entre ambos justifica rasgar el velo corporativo. Pero, en este caso no se justifica descorrer el velo corporativo porque de los autos no surge prueba fuerte y robusta como base para demostrar que la corporación fue creada para realizar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pú-

*cher*, supra, Vol. 18A, Sec. 8748; *Wright and Miller*, supra, Vol. 4, Sec. 1067, pág. 251; *International Shoe v. Washington*, supra; *Lumiere v. Wilder, Inc.*, 261 U.S. 174 (1923); *Toledo Railways & c. Co. v. Hill*, 244 U.S. 49 (1917); *Riverside Mills v. Menefee*, 237 U.S. 189, 194 (1915).

 En conclusión, la Regla 4.4(e) de Procedimiento Civil, *supra*, sobre el emplazamiento personal en el caso de una corporación, requiere la presencia física del ente corporativo en el foro y, por ende, no está disponible para emplazar a una corporación foránea no inscrita en el Departamento de Estado mediante la entrega del emplazamiento y de la demanda a un accionista, director u oficial que se encuentra en la Isla en un viaje no relacionado a la corporación. Al amparo de nuestras reglas procesales, las corporaciones no domiciliadas se emplazan mediante la utilización de las Reglas 4.7 y 4.5 de Procedimiento Civil, *supra*, o los mecanismos provistos por la Ley General de Corporaciones de 1995, según sea el caso.

## IV

En el caso de autos, la parte demandada presentó una moción de desestimación por falta de jurisdicción acompañada de ciertos documentos que establecían que Sun Tech estaba incorporada en las Islas Vírgenes y que no estaba registrada como corporación foránea en el Departamento de Estado del Estado Libre Asociado de Puerto Rico. Además, en la alegación adicional a la moción para desestimar por falta de jurisdicción, incluyó una declaración jurada del Sr. Héctor Peguero, en la que éste afirmó que ni él ni la

blica, justificar la inequidad o defender un crimen, o cuando la corporación es un *alter ego* conducto o instrumento económico pasivo de sus accionistas. *Srio. D.A.C.O. v. Comunidad San José, Inc.*, 130 D.P.R. 782 (1992); *González v. San Just Corp.*, 101 D.P.R. 168 (1973); *San Miguel Fertil. Corp. v. P.R. Drydock*, 94 D.P.R. 424 (1967); *Cruz v. Ramírez*, 75 D.P.R. 947 (1954).

corporación que preside tienen contactos o relación alguna con el foro local.

Ni con la oposición a la moción de desestimación ni con el escrito en respuesta a la contestación a la orden de mostrar causa, la parte demandante acompañó documentos o contradeclaraciones juradas que establecieran, al menos prima facie, la existencia de prueba que acreditara la jurisdicción del tribunal sobre la persona de la corporación demandada. No refutó la prueba presentada por Sun Tech. Sus argumentos sobre el aspecto jurisdiccional se basaron únicamente en una aseveración de que los codemandados conspiraron para privarlo de la oportunidad de un negocio que le representaría beneficios económicos.(15)

El demandante básicamente se limitó a alegar que él y el señor Hernández llevaron a cabo ciertas gestiones para adquirir una compañía de procesamiento y venta de gas fluido en las Islas Vírgenes y que el señor Hernández notificó a las instituciones financieras que el Ingeniero Peguero no deseaba proseguir con el negocio. Insistió que Sun

---

(15) Sobre el mecanismo para examinar una moción para desestimar por falta de jurisdicción sobre la persona, al amparo de la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, hemos explicado que el juez podrá: (1) evaluar la moción tomando en consideración sólo las alegaciones de la demanda; (2) analizar los documentos y declaraciones juradas, si alguno, conjuntamente con las alegaciones, los documentos y las contradeclaraciones juradas que presente el demandante en su oposición; (3) señalar una vista evidenciaria, o (4) posponer la decisión para después de la vista en su fondo. *Molina v. Supermercado Amigo, Inc.*, supra, pág. 338. Si el juez decide evaluar la moción de desestimación tomando en cuenta las alegaciones de la demanda, deberá tomar como ciertos los *hechos bien alegados* en la demanda, demanda contra tercero, demanda contra coparte o reconvención, según sea el caso. *Molina v. Supermercado Amigo, Inc.*, supra, pág. 338. Bajo esas circunstancias, el demandante derrota la moción si demuestra que se han alegado hechos suficientes que, prima facie, de probarse, confieren al tribunal jurisdicción sobre la persona del no domiciliado a base de la Regla 4.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y que se satisfacen los requisitos mínimos de debido procedimiento de ley de las Constituciones de Puerto Rico y Estados Unidos. *Molina v. Supermercado Amigo, Inc.*, supra, pág. 338.

Por otra parte, si la moción de desestimación por falta de jurisdicción sobre la persona es acompañada con documentos y declaraciones juradas, la parte que se opone a la moción tiene que acompañar documentos y contradeclaraciones juradas para derrotarla, demostrando que hay hechos materiales que están en controversia. *Molina v. Supermercado Amigo, Inc.*, supra, pág. 339.

Tech Group, S.E., sociedad compuesta por el Sr. William Hernández, Carlos Roberto Vélez, Héctor Peguero y Sun Tech, conspiraron en su contra para privarlo de la oportunidad de adquirir el negocio, lo que le causó daños por ganancias dejadas de recibir. Por todo lo cual, concluyó que la corporación Sun Tech fue emplazada correctamente, a través de su presidente, Héctor Peguero, mientras éste visitaba la Isla, ya que la corporación, a través de las actuaciones del señor Hernández Pellot, había participado en actos torticeros que le causaron daños. No le asiste la razón.

Si aplicamos las normas procesales antes expuestas encontramos que Sun Tech, una corporación foránea, no se encontraba dentro del área territorial de Puerto Rico por el mero hecho de que su presidente, Héctor Peguero, se encontraba en la Isla en gestiones no relacionadas con dicha corporación. Al no estar presente en Puerto Rico la Sun Tech, la parte demandante no tenía disponible el mecanismo procesal de emplazamiento personal provisto en la Regla 4.4(e), *supra*.

Sun Tech no fue debidamente emplazada. Esto, sin embargo, no dispone del asunto ante nuestra consideración. Debemos examinar si, al amparo de la doctrina de contactos mínimos, existe justificación para que nuestros tribunales asuman jurisdicción sobre Sun Tech. De existir contactos mínimos, lo que procede es anular el emplazamiento y conceder a la parte demandante un término razonable para que emplace a Sun Tech mediante el procedimiento dispuesto en las Reglas 4.5 y 4.7 de Procedimiento Civil, *supra*. De no existir contactos mínimos, la acción contra Sun Tech deberá ser desestimada sin perjuicio.([16]) Veamos.

Sun Tech no realiza actividad alguna en Puerto Rico, no

---

([16]) Desestimada una acción por falta de jurisdicción sobre la persona del demandado, el pleito se podrá instar en el foro donde exista jurisdicción sobre dicho demandado, ya que la acción no ha sido resuelta en los méritos.

hace negocios en la Isla y no obtiene privilegios o beneficios en nuestra jurisdicción.([17]) *World-Wide Volkswagen v. Woodson,* supra. Tampoco podemos concluir que un alegado acto de violación de obligaciones contractuales, imputado al señor Hernández Pellot en su carácter personal, obligue a Sun Tech a defenderse de una causa de acción presentada en su contra en nuestro foro, máxime cuando dicha corporación no está presente en la jurisdicción y no existe acto afirmativo alguno que pueda interpretarse como que se ha beneficiado del privilegio de hacer negocios en la Isla.

Aun la lectura más liberal y favorable de las alegaciones de la demanda no refleja la existencia de alguna de las circunstancias descritas en nuestra regla de largo alcance. Regla 4.7(a)(3) de Procedimiento Civil, 32 L.P.R.A. Ap. III. No se desprende algún hecho torticero realizado en nuestra jurisdicción por la codemandada Sun Tech. Ni siquiera se puede concluir que el alegado daño, si alguno, surgió o resultó de actividades de la parte demandada dentro del foro o que, plasmado fuera, tuvo efectos sustanciales dentro del foro. De la demanda enmendada surge que quien se alega cometió el acto torticero, si alguno, fue el codemandado señor Hernández Pellot. Si acaso se cometió el mismo, éste se configuró en las Islas Vírgenes donde se iba a llevar a cabo la transacción, y no en nuestra jurisdicción.

Además, cabe señalar que cuando un demandante intenta traer a la jurisdicción local a una parte no domiciliada en Puerto Rico, conforme a la Regla 4.7, *supra,* y este hecho se alega en la demanda, es aconsejable que el promovente también alegue hechos suficientes de los cuales se pueda inferir de forma razonable que existe jurisdicción sobre el promovido, a tenor con los requisitos procesales y constitucionales. No basta con que hagan alegaciones

([17]) La Ley General de Corporaciones de 1995, en su Art. 13.04 (14 L.P.R.A. sec. 3164), enumera ciertas actividades que no constituyen transacciones de negocios en el Estado Libre Asociado.

concluyentes; después de todo, el peso de la prueba para establecer la jurisdicción lo tiene el demandante. *Molina v. Supermercado Amigo, Inc.*, supra, págs. 336–337; Cuevas Segarra, *op. cit.*

Meras especulaciones de que los codemandados le causaron daños económicos a la parte demandante no constituyen una alegación bien hecha para establecer la jurisdicción del tribunal sobre la persona corporativa de Sun Tech.[18] De los documentos presentados ante nos se desprende que la parte demandante no estableció, al menos prima facie, la existencia de prueba alguna que acreditara la jurisdicción de la corporación demandada.

En fin, es preciso concluir que Sun Tech no tiene contactos mínimos con nuestra jurisdicción, por lo cual no existe jurisdicción sobre su persona. Procede, pues, revocar la orden del Tribunal de Primera Instancia, Sala de San Juan, que denegó la moción de desestimación por falta de jurisdicción sobre la persona de Sun Tech y declarar con lugar dicha moción.

Por todo lo antes expuesto, *se expide el auto de "certiorari" solicitado y se dictará sentencia mediante la cual se revoca la resolución del foro de instancia denegando la moción de desestimación y se concede la desestimación de la demanda contra Sun Tech, sin perjuicio.*

El Juez Asociado Señor Rebollo López se inhibió. El Juez Asociado Señor Fuster Berlingeri concurrió sin opinión escrita.

---

[18] De hecho, en nuestra jurisdicción es requisito indispensable para iniciar una acción por interferencia culposa la existencia de un contrato; no procede la acción si lo que se afecta es una mera expectativa o una relación económica provechosa. *Dolphin Intl. of P.R. v. Ryder Truck Lines*, 128 D.P.R. 869 (1991).