El Juez Asociado Señor Feliberti Cintrón
emitió la opinión del Tribunal.
Mediante el presente recurso atendemos los méritos de las imputaciones de responsabilidad personal a los miembros de la junta de directores de una corporación, interpuestas por un exempleado de la institución a causa de su despido, así como las reclamaciones de algunos de sus familiares por supuestos daños derivados de dicho suceso.
I
El 26 de mayo de 1998, el Sr. Randolfo Rivera Sanfeliz (señor Rivera) subscribió un contrato de empleo (Contrato) con FirstBank Puerto Rico (FirstBank o el Banco) para ocupar el puesto de Vicepresidente Ejecutivo. A cambio de sus servicios, FirstBank se comprometió con el señor Rivera a pagarle un salario base mínimo de $200,000 anuales y a concederle, entre otros beneficios, un bono de $50,000 por firmar su Contrato (signing bonus) y bonos de productividad de al menos $100,000 por los primeros dos años de empleo. Pactaron, además, un término inicial de cuatro años, el cual se extendería automáticamente por un año a menos que, 90 días antes de culminar el año en curso, alguna de las partes notificara a la otra por escrito su deseo de terminar el acuerdo.
*42 En lo pertinente a la controversia de autos, las partes acordaron que, tanto la Junta de Directores de FirstBank como el señor Rivera, podían dar por terminado el Contrato “con causa” en cualquier momento o, “sin causa”, mediante una notificación previa de 90 días por escrito.(1) Respecto a lo anterior dispusieron que, del señor Rivera ser despedido “sin causa”, éste tendría derecho a una indemnización (severance payment) equivalente al pago de cuatro años de su salario base.(2) Asimismo, convinieron que cualquier determinación que tomara el Banco concerniente al Contrato, ya fuese enmendarlo o despedir al señor Rivera, requeriría la aprobación de dos terceras partes de todos los miembros de la Junta de Directores.(3) Por último, estipularon que, de surgir cualquier controversia sobre la interpretación del Contrato, se sometería a un procedimiento de arbitraje.(4)
El Contrato fue objeto de dos enmiendas. La primera, del 15 de enero de 2009, se circunscribió a limitar la indemnización (severance) pagadera al señor Rivera en caso de que FirstBank diera por terminado el Contrato. Ello con el propósito de atemperar las cláusulas contractuales concernientes a las disposiciones del Emergency Economic Stabilization Act of2008.
La segunda enmienda, suscrita el 27 de octubre de 2009, surgió como consecuencia de la participación de FirstBank en el Troubled Asset Relief Program y el Capital Purchase Program del gobierno federal. Se impusieron unas restricciones temporeras a la compensación, beneficios e indemnización que el señor Rivera tendría derecho a recibir al amparo del Contrato, a los efectos de que dichas concesiones se hicieran conforme a las exigencias del Emergency Economic *43 Stabilization Act of2008 y el American Recovery and Reinvestment Act of2009.
El 28 de junio de 2010 el señor Rivera fue despedido.(5) Este reaccionó presentando una querella ante el Tribunal de Primera Instancia el 23 de agosto de 2010 contra First-Bank al amparo del procedimiento especial de carácter sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA see. 3118 et seq. Véase Civil Núm. KPE-2010-3164. Reclamó los daños económicos y emocionales presuntamente sufridos a consecuencia del cese de su empleo. Sostuvo que su despido fue injustificado en violación a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA see. 185 et seq., y que el Banco actuó en contravención del Contrato suscrito entre ellos.
Luego de varios trámites procesales, FirstBank presentó una moción para detener los procedimientos judiciales y compeler a arbitraje todas las causas de acción esgrimidas en la Querella, apoyándose en la cláusula de arbitraje del Contrato. A pesar de la oposición del señor Rivera, mediante la Sentencia de 17 de julio de 2012, el foro primario declaró “ha lugar” la solicitud de FirstBank, declarándose sin jurisdicción y ordenando al señor Rivera someter su reclamo a arbitraje.
El 16 de junio de 2011, previo a que se dictara la Sentencia antes mencionada en el caso Civil Núm. KPE-2010-3164, el señor Rivera presentó ante el Tribunal de Primera Instancia —junto a su compañera, Zahira Serrano Díaz, sus hijos, Omar E. Rivera Rivera, Mariela Rivera Rivera y Sebastián Rivera Norcisa, y sus hermanos, Luz y Gerant Rivera Sanfeliz (los recurridos)— la reclamación que dio génesis al recurso ante nuestra consideración (Civil Núm. KAC-2011-0675). La demanda fue incoada en contra de los miembros de la Junta de Directores de FirstBank, sus res *44 pectivos cónyuges y las correspondientes Sociedades Legales de Gananciales (conjuntamente, los peticionarios).(6)
La primera causa de acción comprende las alegaciones pertinentes al señor Rivera, quien reclamó los daños y perjuicios causados por la alegada negligencia de los peticionarios en el descargo de sus funciones como directores y oficiales de FirstBank. Igualmente, consignó que fue despedido sin que se cumpliera con los requisitos de notificación previa y del voto afirmativo de dos terceras partes de los miembros de la Junta de Directores establecidos en su Contrato, por lo que el despido resultó nulo o, en la alternativa, injustificado. Asimismo, precisó que las dos enmiendas al Contrato eran nulas por haberse adoptado sin el consentimiento de dos terceras partes de la Junta de Directores. Planteó, además, que posterior a su despido, advirtió por escrito en dos ocasiones a los miembros de la Junta de Directores del incumplimiento con su Contrato.
La segunda causa de acción de la demanda contiene las reclamaciones del resto de los recurridos, es decir, los hermanos, hijos y la novia del señor Rivera. Éstos alegaron haber padecido daños y angustias mentales al observar el sufrimiento del señor Rivera, así como las condiciones económicas adversas que le sobrevinieron como resultado de su despido. Como base para su acción, expusieron que los oficiales y directores demandados “son responsables solidarios de los daños [...] por las actuaciones y/u omisiones negligentes al no cumplir con sus responsabilidades de forma cabal y efectiva en las funciones que le exigen la posición que ocupan en FirstBank, lo que ocasionaron que se viola-ran los términos y condiciones del [C]ontrato [...]”.(7)
*45 El señor Rivera reclamó para sí: $5,000,000 en calidad de daños económicos, $500,000 por salarios dejados de percibir y $1,000,000 en compensación por sus angustias mentales. El resto de los recurridos exigió un total de $6,750,000 como resarcimiento por sus angustias mentales.
Los peticionarios, sin someterse a la jurisdicción del tribunal, solicitaron la desestimación de la demanda por no haberse incluido a FirstBank como demandado, alegando ser éste parte indispensable para el trámite y resolución del caso. Asimismo, plantearon que la demanda no aducía una reclamación que justificara la concesión de un remedio. Por último, señalaron que los recurridos carecían de legitimidad para instar una reclamación en contra de la Junta de Directores por el incumplimiento con sus deberes fiduciarios.
El tribunal de instancia acogió sus planteamientos y dictó Sentencia el 29 de agosto de 2012 desestimando la demanda, sin perjuicio, por esta no exponer una reclamación que justificara la concesión de un remedio. Entendió el foro primario que las alegaciones de la demanda iban dirigidas únicamente a cuestionar el alegado incumplimiento de los directores con su deber de fiducia y no incluyeron argumentos adicionales o independientes para adjudicarles responsabilidad. Razonó que solamente los accionistas de FirstBank estaban facultados para alegar, por medio de una acción derivativa, el incumplimiento de los deberes fiduciarios de los directores. Destacó asimismo que, en un pleito de tal naturaleza, FirstBank se consideraba parte indispensable. No obstante, indicó que aun si se permitiera traer a FirstBank al caso, ello no sería suficiente para subsanar el hecho de que los recurridos estaban presentando una acción derivativa sin ser accionistas.
Inconformes, los recurridos presentaron una moción de reconsideración el 26 de septiembre de 2012. Plantearon que no procedía la desestimación porque los directores y oficiales demandados respondían extracontractualmente por los daños y perjuicios causados. Alegaron además que, *46 habiendo la Junta de Directores aprobado y autorizado el Contrato con FirstBank, la misma era “igualmente responsable” del incumplimiento contractual. Solicitaron, además, que se les permitiera unir a FirstBank al pleito. Advirtieron que, en caso de que existiera conflicto al traer a dicha parte, pues ya el señor Rivera tenía una acción pendiente contra FirstBank por despido injustificado, éste estaría dispuesto a desistir de su causa de acción en el pleito de autos, mas no así el resto de los recurridos.
El 31 de octubre de 2012, los peticionarios presentaron una Oposición a Moción de Reconsideración. En la misma reiteraron que la imposición de responsabilidad personal a los directores por incumplimiento de sus deberes fiduciarios únicamente procede en aquellos casos en que éstos deban responder a la corporación y no a terceros ajenos a ésta. Sostuvieron, además, que traer a FirstBank al pleito no subsanaba la inexistencia de una causa de acción en contra de los miembros de la Junta de Directores.
El 10 de diciembre de 2012, el Tribunal de Primera Instancia emitió una Resolución denegando la solicitud de reconsideración. El foro de instancia entendió que para traer a FirstBank al pleito “habría que enmendar la Demanda y prácticamente comenzar de nuevo el caso, para ahora incluir alegaciones directas en contra [del Banco] ”.(8) También resolvió que acumular a FirstBank podría crear una indeseable bifurcación o fragmentación de los procedimientos, ya que el señor Rivera tenía otro caso pendiente por los mismos hechos en contra del Banco. En vista de ello, determinó que era improcedente permitir a los recurridos enmendar su demanda para añadir a FirstBank como parte demandada. En cuanto a la responsabilidad personal de los miembros de la Junta de Directores, el foro de instancia expresó lo siguiente:
[E]n el caso particular de establecer responsabilidad a los directores de una corporación, nuestro ordenamiento vigente in *47 dica que solamente la negligencia crasa en el desempeño de las obligaciones y deberes de éstos, conllevará responsabilidad. Así, pues, determinamos que de las alegaciones en la Demanda no surge que los miembros de la Junta de Directores de FirstBank hayan incurrido en negligencia crasa, mala fe o no hayan desplegado una diligencia razonable. Lo que sí surge con claridad de los hechos alegados en la Demanda, es que estamos ante una causa de acción de daños por incumplimiento contractual, la cual solamente puede ser litigada por quienes han sido parte en el [C]ontrato, en este caso el Sr. Rivera Sanfeliz y FirstBank. Por lo tanto, los miembros de la Junta de Directores de First-Bank no responden por los daños contractuales alegados en la Demanda. Resolución del Tribunal de Primera Instancia, Apéndice, págs. 106-107.
Oportunamente, el 15 de enero de 2013, la parte recurrida presentó una petición de certiorari ante el Tribunal de Apelaciones, la cual fue acogida como una apelación. Señalaron los recurridos que el foro primario erró al no permitir que se enmendara la demanda para incluir a FirstBank, a pesar de haber determinado que el Banco era parte indispensable. Asimismo, alegaron que el tribunal de instancia erró al resolver que los miembros de la Junta de Directores no respondían por los daños ocasionados, pues fueron éstos los que violaron el Contrato. Informaron además que el señor Rivera había iniciado un procedimiento de arbitraje para el reclamo de sus derechos amparado en el Contrato entre FirstBank y él, por lo que, si el foro apelativo intermedio resolvía a su favor, el señor Rivera procedería de inmediato a renunciar como demandante en el presente pleito, quedando únicamente sus familiares como demandantes.
Mediante la Sentencia de 30 de septiembre de 2013, el Tribunal de Apelaciones revocó el dictamen recurrido. El foro apelativo intermedio entendió que no existía impedimento para permitir la enmienda de la demanda e incorporar a FirstBank, una parte indispensable, al pleito. En torno a la responsabilidad personal de los miembros de la Junta de Directores, expresó lo siguiente:
*48 Según citamos anteriormente, el Artículo 4.03 de la Ley 164-2009, supra, dispone que la negligencia crasa en el desempeño de sus labores por parte de los directores podría conllevar responsabilidad. Sin embargo, solo con el beneficio de las solicitudes de desestimación y oposición el tribunal determinó que estos no incurrieron en negligencia crasa ni desplegaron mala fe por lo cual no respondían. Somos de la opinión que mediante dicha expresión, el tribunal prejuzgó los méritos de la reclamación y no era la etapa procesal más idónea para llegar a esa conclusión [...] Sentencia del Tribunal de Apelaciones, pág. 13, Apéndice, pág. 185.
El 18 de octubre de 2013, los peticionarios sometieron una solicitud de reconsideración, la cual fue declarada “no ha lugar” el 25 de octubre de 2013. Inconforme con dicho dictamen, los peticionarios acuden ante nos mediante el presente recurso de certiorari y plantean los errores siguientes:
Erró el Honorable Tribunal de Apelaciones al no resolver que los demandantes-recurridos carecían de legitimidad activa para instar una acción contra los miembros de la Junta de Directores de FirstBank por violación a sus deberes fiduciarios.
Erró el Honorable Tribunal de Apelaciones al no resolver que los demandantes-recurridos carecían de una causa de acción directa e independiente contra los miembros de la Junta de Directores de FirstBank en su calidad personal por el despido de Randolfo Rivera.
Erró el Honorable Tribunal de Apelaciones al resolver que procedía enmendarse la Demanda para incorporar a FirstBank como parte indispensable. No procedía enmendarse la misma, pues a[u]n trayéndose a FirstBank al pleito para subsanar el defecto de falta de acumulación de parte indispensable, los demandantes-recurridos carecían de una causa de acción contra los miembros de la Junta de Directores de FirstBank. Permitir la incorporación del Banco al pleito crearía una fragmentación indebida de las reclamaciones ante foros distintos. Petición de certiorari, págs. 9-10.
Atendido el recurso, expedimos el auto de certiorari mediante la Resolución de 25 de abril de 2014. Contando con la comparecencia de ambas partes, estamos en posición de resolver.
*49 II
A. Moción de desestimación
La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que un demandado solicite al tribunal la desestimación de la demanda en su contra por los fundamentos siguientes: (1) “falta de jurisdicción sobre la materia o persona”, (2) “insuficiencia del emplazamiento o su diligenciamiento”, (3) “dejar de exponer una reclamación que justifique la concesión de un remedio” y (4) “dejar de acumular una parte indispensable”. Colón Rivera et al. v. ELA, 189 DPR 1033, 1049 (2013); Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 935 (2011). Al considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. Colón Rivera et al. v. ELA, supra; El Día, Inc. v. Mun. de Guaynabo, 187 DPR 811 (2013).
Así pues, para que proceda una moción de desestimación, “tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor”. Ortiz Matías et al. v. Mora Development, 187 DPR 649, 654 (2013). Véanse, además: Colón Rivera et al. v. ELA, supra; El Día, Inc. v. Mun. de Guaynabo, supra.
B. La corporación
Las corporaciones existen en virtud de una ficción jurídica instaurada a través de la Ley General de Corporaciones, la cual les faculta a “la realización o promoción de cualquier negocio o propósito lícito [...]”. Art. 1.01(b) de la Ley General de Corporaciones (14 LPRA sec. 3501(b)). Su existencia como ente jurídico es independiente de sus accionistas, directores y oficiales. Peguero y otros v. Hernán *50 dez Pellot, 139 DPR 487, 502 (1995); D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905, 924 (1993). Por su propia naturaleza artificial e intangible, las corporaciones necesariamente actúan a través de sus empleados y agentes. Véanse: Gasolinas PR v. Registrador, 155 DPR 652, 665-666 (2001); U.T.I.E.R. v. A.E.E., 149 DPR 498, 510 (1999); Peguero y otros v. Hernández Pellot, supra; Vega v. Adm. Servs. Médicos, 117 DPR 138, 146 (1986).
Con el propósito de hacer viables sus operaciones internas y de este modo adelantar sus objetivos, la Ley de Corporaciones establece unas estructuras requeridas para asegurar el buen funcionamiento de la entidad. Entre éstas se encuentran la junta de directores y los oficiales.
[L]a corporación necesita valerse de ciertos órganos, instrumentos o agentes para el despliegue de sus actividades internas y externas. Los órganos corporativos son constituidos por personas físicas o por grupos de personas a quienes la Ley otorga la autoridad de manifestar y cumplir con la voluntad de la entidad, y desarrollar las actividades jurídicas necesarias para alcanzar los objetivos de la corporación. Estos órganos • son la junta de directores y los oficiales. (Escolio omitido). C.E. Díaz Olivo, Corporaciones, San Juan, Publicaciones Puertorriqueñas, 2005, pág. 76.
El esquema corporativo está compuesto, por una parte, por los accionistas en calidad de dueños, y por otra parte, por la administración interna de la entidad que, a menos que se disponga otra cosa, recae sobre sus directores y oficiales. Cabe señalar que, a pesar de su condición de propietarios, los accionistas no participan en la dirección de los quehaceres de la corporación; es decir, no la dirigen ni administran. Como regla general, esta responsabilidad corresponde a la junta de directores seleccionada por los accionistas.(9) Véanse: C.R.T. O’Kelley y R.B. Thompson, *51 Corporations and Other Business Associations, 5ta ed., Nueva York, Aspen Publishers, 2006, págs. 141-142; Díaz Olivo, op. cit., págs. 76-77 y 101.
El modelo corporativo opera según un formato de jerarquía institucional conforme al cual los poderes corporativos se ejercitan bajo la autoridad de un equipo centralizado denominado la junta de directores, mientras que la operación de día a día se encomienda a sus oficiales. Los directores son responsables de designar un cuerpo de oficiales encargados de operar y manejar los asuntos diarios de la empresa.(10) Véanse: O’Kelley y Thompson, op. cit, págs. 141-142; Díaz Olivo, op. cit, pág. 101. “En términos sencillos podemos decir que la función principal de la junta de directores es establecer y formular la política corporativa. [...] Una vez la junta establece la política corporativa, su implantación y el manejo de los asuntos diarios de la empresa se les encomienda a los oficiales”. Díaz Olivo, op. cit, págs. 76-77.
A pesar de estas diferentes jerarquías y rangos, se per-mite que una misma persona opere simultáneamente en todas ellas. Es decir, un accionista puede ocupar posiciones de director y oficial al mismo tiempo. Tampoco la ley exige un número mínimo de directores, por lo que queda al arbitrio de cada corporación fijarlo de acuerdo a sus necesidades.(11)
i. Fiducia
Como parte del derecho corporativo se ha reconocido que los directores y oficiales se encuentran en una relación fiduciaria frente a la corporación y sus accionistas. Díaz Olivo, op. cit. Véase, además, Epstein v. F. & F. Mort *52 gage Corp., 106 DPR 211 (1977). Esto se debe a que “en ellos se ha depositado una fe y una confianza que deben corresponder con actos en pro de los mejores intereses de la corporación”. L.M. Negrón Portillo, Derecho corporativo puertorriqueño, 2da ed., [s. 1.], [ed. de autor], 1996, pág. 212.
En nuestro esquema corporativo puertorriqueño, la relación de fiducia que enmarca la conducta de los directores y oficiales está fijada en el Art. 2.03 de la Ley de Corporaciones, 14 LPRA see. 3523, de la forma siguiente:
La autoridad y los poderes conferidos a [...] los directores y oficiales [...] se disfrutarán y deberán ejercerse [...] por los directores u oficiales, según sea el caso, en beneficio de los accionistas de la corporación y para la gestión prudente de sus negocios y asuntos, así como para la promoción de sus objetivos y propósitos. (Énfasis nuestro).
El profesor Díaz Olivo destaca que, dada su condición de “gestores de negocios ajenos”, el artículo antes citado le impone a los oficiales y directores la obligación de ejercitar sus poderes teniendo como norte los mejores intereses de la corporación. Díaz Olivo, op. cit., pág. 67.
Igualmente, se deducen del aludido precepto las tres responsabilidades primordiales que corresponden a los oficiales y directores de una corporación. Éstas son: (1) la obligación de actuar dentro del marco de su autoridad, (2) el deber de diligencia y (3) el deber de lealtad, que a su vez “aparecen delineadas específicamente en los Artículos 4.03, 4.04 y 4.05 de la ley”. Díaz Olivo, op. cit., pág. 67.(12)
En cuanto al deber fiduciario de diligencia, principio medular al caso de autos, el Art. 4.03 de la Ley de Corporaciones, 14 LPRA see. 3563 (Art. 4.03 de la Ley de Corporaciones), dispone lo siguiente:
*53 Los directores y oficiales estarán obligados a dedicar a los asuntos de la corporación y al desempeño de sus funciones, la atención y el cuidado que en una posición similar y ante circunstancias análogas desempeñaría un director u oficial responsable y competente al ejercer de buena fe su juicio comercial o su mejor juicio en el caso de las corporaciones sin fines de lucro. Sólo la negligencia crasa en el desempeño de las obligaciones y deberes antes reseñados conllevará responsabilidad. (Enfasis nuestro).
El referido artículo establece, por lo tanto, el estándar de cuidado que rige la conducta de los oficiales y directores cuando estos atienden los asuntos corporativos. Se les exige diligencia y competencia en el descargo de sus funciones, pero únicamente la negligencia crasa en el cumplimiento de las obligaciones y deberes inherentes a sus puestos conllevará responsabilidad.(13) De este modo, se brinda el espacio necesario a los directores y oficiales para que conduzcan las operaciones de la empresa con cierto grado de flexibilidad sin temor a ser demandados, a la vez que se evita la intervención judicial excesiva en las cuestiones corporativas. Díaz Olivo, op. cit, pág. 126.
El criterio de negligencia crasa insertado en la última oración del Art. 4.03 de la Ley de Corporaciones no puede tomarse aislado del resto del precepto e interpretarse como la imposición de un deber general de conducta frente a todos. Más bien, debe interpretarse en el contexto *54 del imperativo de fíducia que rige la relación de los directores y los oficiales frente a la corporación. El deber de diligencia que surge del Art. 4.03 de la Ley de Corporaciones forma parte del concepto amplio de fiducia que los directores y oficiales están obligados a acatar en virtud de sus cargos dentro del esquema corporativo. Es decir, consigna la obligación específica de llevar a cabo sus cometidos de manera capaz y responsable, pero siempre en función de los intereses de la entidad. Naturalmente, el incumplimiento de estos deberes inherentes a sus funciones hacia la corporación pudiera generar responsabilidad personal a los directores y oficiales. No obstante, esta responsabilidad se producirá ex-clusivamente de cara a la corporación y únicamente si ésta sufre daños como consecuencia de ese quebrantamiento. Véanse: Negrón Portillo, op. cit., págs. 213-214; Díaz Olivo, op. cit, pág. 102.
ii. Acción derivativa
La acción derivativa es un remedio basado en equidad utilizado “para vindicar los derechos de una corporación, cuando las personas llamadas a hacerlo no lo hacen”. J.F. Gierbolini Bonilla, La acción derivativa como mecanismo de control y monitoreo en Puerto Rico, 1 UPR Bus. L.J. 81, 82 (2010). Igualmente, se ha descrito como aquella “que un accionista presenta, no para evitar o remediar un daño, lesión, incumplimiento o abuso hacia él, sino hacia la corporación”. Negrón Portillo, op. cit., pág. 428. Como corolario a lo anterior, la propia Ley de Corporaciones exige que en toda acción derivativa se alegue específicamente en la demanda la condición de accionista del demandante.(14)
Se destaca su utilidad como vehículo para cuestionar *55 conducta contraria a los intereses de la corporación por parte de sus directores, pero siempre según la premisa de que se están exigiendo derechos de la corporación y no propios del que inicia la acción. Así pues, se ha descrito su propósito de la manera siguiente:
La Acción Derivativa, (Derivative Suit) es una acción contra los directores de una corporación fundamentándose en que los directores no están tomando decisiones para el beneficio de los accionistas. Por lo general, quien decide si demanda a nombre de la corporación es la junta de directores, ya que los accionistas delegaron en ellos esa facultad. Si la junta y los oficiales no utilizan los fondos corporativos para el bienestar de los accionistas, es decir, por ejemplo, malversación de fondos o conflicto de intereses, a modo de excepción los accionistas pueden ins-tar una Acción Derivativa, a nombre de la corporación y en contra de la junta de directores, reclamando los daños que esos funcionarios corporativos ocasionaron. Esta acción se fundamenta en la alegación de que no se están administrando los fondos en el mejor interés de los accionistas. Gierbolini Bonilla, supra, pág. 82.
Sirve a su vez para vindicar violaciones al deber de fiducia que le deben sus directores y oficiales.
La acción derivativa es una reclamación judicial de una causa de acción de la corporación y la inician los accionistas en ocasiones cuando la propia corporación ha fallado en reclamar sus derechos contra aquellas personas, externas o internas, que le han ocasionado algún daño a la entidad. [...] Como la acción derivativa se insta para vindicar algún derecho de la corporación, cualquier recobro que se logre pertenece a ésta. [...] Los pleitos de naturaleza derivativa son básicamente pleitos fundamentados en violaciones a los deberes fiduciarios de lealtad y diligencia por parte de los administradores de la corporación. (Enfasis nuestro y escolios omitidos). Díaz Olivo, op. cit., págs. 276-277.
A base de lo anterior, es necesario concluir que un no accionista de la corporación carece de legitimación para instar una acción derivativa dirigida a atender la alegada violación de deberes fiduciarios propios de la corporación. *56 Véase Schoon v. Smith, 953 A.2d 196 (Del. 2008). En ese caso, el Tribunal Supremo del estado de Delaware resolvió que un director no accionista no tiene legitimación para presentar una acción derivativa por la violación de sus compañeros directores a sus deberes fiduciarios. De igual forma, un no accionista no posee legitimación para presentar una acción directa en contra de los directores y oficiales de una corporación por éstos violar sus deberes fiduciarios. Véanse: Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169 (Del. Ch. 2002) (“[U]nder established Delaware law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach. [...] [T]he court declines to permit an entity that could not sue in its own right to sue directors for breach of a fiduciary duty owed to others”); Prudential-Bache Sec., Inc. v. Franz Mfg. Co., 531 A.2d 953, 955 (Del. Super. 1987) (“[W]hile [...] shareholders or the corporation itself may have a right of action against [the director] for breach of his fiduciary duties, [plaintiff], as a mere creditor, is without standing to assert such a claim”).(15)
C. Acción “ex contractu” y “ex delicto”
Como es sabido, la responsabilidad contractual se basa “en el quebrantamiento de un deber que surge de un contrato expreso o implícito”. Soc. de Gananciales v. Vélez & Asoc., 145 DPR 508, 521 (1998). A través de las acciones ex contractu se vindican los daños acaecidos como consecuencia del incumplimiento de obligaciones previamente pactadas. Implícito en este axioma es “que al daño le preceda una relación jurídica entre las partes concernidas”. Maderas Tratadas v. Sun Alliance et al., 185 DPR 880, 909 *57 (2012). En otras palabras, sin contrato no hay daño reclamable según este supuesto.
En Muñiz-Olivari v. Stiefel Labs., 174 DPR 813 (2008), resolvimos que, ya que el contrato regula la relación entre las partes, las acciones ex contractu sólo pueden ser ejercitadas por una parte contratante en contra de la otra. “Por lo tanto, un tercero extraño a una relación contractual no está legitimado para exigir —al amparo del Art. 1054— el resarcimiento de los daños sufridos a raíz del incumplimiento de la obligación contractual”. íd., págs. 822-823.
Por su parte, el Art. 1802 del Código Civil, 31 LPRA see. 5141, dispone que “[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado”. Este tipo de acción, denominada ex delicto, consigna el resarcimiento de los daños ocurridos como consecuencia del quebrantamiento del principio general de convivencia social que supone no causar daño a los demás. A diferencia de la situación ex contractu, la responsabilidad según el Art. 1802 del Código Civil, supra, surge precisamente como resultado del daño sin que haya mediado relación jurídica previa.
HH h—I hH
Expuesta la normativa aplicable al caso, pasamos a resolver la controversia ante nuestra consideración.
Según indicamos anteriormente, los recurridos plantean que los peticionarios faltaron a sus obligaciones y deberes fiduciarios por la presunta negligencia en el ejercicio de sus funciones como directores y oficiales de FirstBank, al permitir que el Banco contraviniera las disposiciones del contrato de empleo del señor Rivera y no rectificar esas infracciones.(16)
*58 De un examen integral de la demanda surge que la reclamación de los recurridos en contra de los miembros de la Junta de Directores concierne, en síntesis, a asuntos de estricta naturaleza contractual y fiduciaria.(17)
Primeramente, las alegaciones tienen todas un mismo hilo conductor: el Contrato. Son las obligaciones, según consignadas en el pacto laboral acordado entre el señor Rivera, como empleado, y FirstBank, en calidad de patrono, las que dan base a la reclamación. Estas, a su vez, se reducen a dos condiciones específicas. El voto de dos terceras partes de la Junta de Directores como requisito para: (1) enmendar los términos del acuerdo de empleo, y (2) prescindir de los servicios del señor Rivera. A través de su demanda, los recurridos armaron todo un esquema de responsabilidad fundado en estas dos premisas, las cuales, a su vez, convergen con el deber de fiducia con el Banco que recae sobre los individuos que componen la Junta de Directores.
Los recurridos apoyan su reclamo en el alegado incumplimiento de FirstBank con los términos del contrato de empleo en cuestión, a base de lo cual aducen que los miembros de la Junta de Directores incurrieron en responsabilidad personal al no detener o corregir las infracciones supuestamente cometidas por el Banco. No existe controversia de que las únicas partes contratantes en este caso son el señor Rivera y FirstBank. A la luz del Derecho aplicable, es el Banco, por lo tanto, quien está forzado a responder por cualquier violación a esas obligaciones contraídas. Como bien expresara el tribunal de instancia, los miembros de la Junta *59 de Directores no están obligados en su carácter personal por el alegado incumplimiento contractual.
Recordemos que toda corporación “es un organismo artificial, indivisible, intangible, existente solamente en contemplación a la ley [y] por razón de su apariencia intangible, todos sus actos han de realizarse en su nombre corporativo por conducto de sus agentes [...]”. Sabalier v. Iglesias, 34 DPR 352, 355 (1925). Es decir, de haberse violado el Contrato, dicho incumplimiento sería atribuible únicamente a FirstBank, al actuar por medio de sus oficiales y directores.
Lo anterior resulta cónsono con lo reseñado previamente sobre las condiciones inherentes a la naturaleza de las acciones “ex contractu”. Es decir, en este caso la responsabilidad está precedida y tiene como base el acuerdo de trabajo del señor Rivera. Las violaciones reseñadas surgen precisamente como resultado del alegado quebrantamiento de deberes a los cuales se ataron exclusivamente el señor Rivera y el Banco. Los miembros de la Junta de Directores, en su capacidad personal, no formaron parte de ese Contrato, por lo cual no pueden ser llamados a responder por las infracciones aducidas en la demanda.
Por otro lado, las imputaciones en este recurso giran en torno al presunto incumplimiento de los peticionarios con sus obligaciones en calidad de directores y oficiales de la corporación, lo cual se traduce esencialmente a su deber de fiducia. Notamos que, aparte de referencias generalizadas y conclusivas implicando una alegada responsabilidad ex-tracontractual, no aparecen plasmadas en la demanda actuaciones ni omisiones de los directores y oficiales demandados que puedan dar base a una reclamación al amparo del Art. 1802 del Código Civil, supra. Por el contrario, la propia demanda atribuye, tanto a Aurelio Alemán Bermúdez como a Lawrence Odell, violar “sus deberes fiduciarios”,(18) y a la Junta de Directores el “omití [r] cumplir con *60 su deber dentro del curso de sus responsabilidades y deberes [...]”.(19)
Según expusiéramos anteriormente, el Banco es el titular exclusivo del derecho a exigir el cumplimiento del deber de fiducia de sus directores. Por esta razón es éste, o sus accionistas mediante un proceso de naturaleza derivativa, los únicos debidamente legitimados a proseguir una causa de acción basada en el incumplimiento de dicha obligación. Al no ser accionistas de la corporación, ni representarla de manera alguna, los recurridos no están facultados para incoar una reclamación por el alegado quebrantamiento del deber fiduciario que recae, como cuestión de derecho, sobre los miembros de la Junta de Directores del Banco.
Por último, resulta necesario destacar que, al emitir su determinación, el tribunal apelativo intermedio erróneamente otorgó legitimación a los recurridos para instar una reclamación utilizando como fundamento el Art. 4.03 de la Ley de Corporaciones. Sin embargo, conforme apuntamos anteriormente, esta disposición estatutaria no provee una causa de acción habilitando a cualquier persona a demandar a los directores u oficiales de una corporación por presunta negligencia crasa en el cumplimiento con sus deberes fiduciarios. Debido a que el deber de fiducia lo tienen los directores y oficiales ante la corporación en virtud del puesto que ocupan, corresponde únicamente a la propia corporación o, en su defecto, a sus accionistas por vía de una acción derivativa, el reclamarlo.
En resumen, aun tomando como ciertos todos los hechos debidamente expuestos en la demanda e interpretándolos de la manera más liberalmente posible a favor de los recurridos, no podemos deducir que éstos hayan presentado una reclamación que justifique la concesión de un remedio.(20) *61 Procede, por lo tanto, la desestimación de la demanda conforme establece la Regla 10.2 de Procedimiento Civil, supra.
IV
A base de lo anteriormente indicado, se revoca el dicta-men emitido por el Tribunal de Apelaciones y se reinstala la sentencia dictada por el Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez disintió con opinión escrita.

 Contrato, Cláusula 11(a) y (b). Cabe señalar que el Contrato expresamente define lo que constituye “causa” para ambas partes. Apéndice, págs. 25-27.

 Contrato, cláusula 11(a). Apéndice, págs. 25-27.

 Contrato, cláusula 18. Apéndice, pág. 33.

 Contrato, cláusula 22. Apéndice, pág. 34.

 A la fecha del despido, el señor Rivera devengaba un salario base de $550,000.

 Para entonces la Junta de Directores estaba compuesta por la señora Sharee Ann Umpierre Catinchi y los señores José Menéndez Cortada, Aurelio Alemán Bermudez, Frank Kolodziej Castro, José Rodríguez Perelló, Héctor Nevares La Costa, Fernando Rodríguez Amaro, Jorge L. Díaz Irizarry, José Luis Ferrer Canals y Lawrence Odell.

 Demanda, párr. 27, Apéndice, pág. 50. Véanse, además, los párrs. 31 y 35, íd., pág. 51.

 Resolución del Tribunal de Primera Instancia, Apéndice, pág. 106.

 El Art. 4.01(a) de la Ley de Corporaciones, 14 LPRAsec. 3561(a), dispone que “Dios negocios y asuntos de toda corporación organizada con arreglo a las disposiciones de este subtítulo, serán dirigidos por la junta de directores, salvo cuando otra cosa se disponga en este subtítulo o en el certificado de incorporación”.

 A esos efectos, el Art. 4.02(a) de la Ley de Corporaciones, 14 LPRA see. 3562(a), indica:
“Toda corporación organizada con arreglo a este subtítulo deberá tener los oficiales según los títulos y deberes que se disponga en los estatutos de la corporación o en una resolución de la junta de directores que no sea inconsistente con dichos estatutos [...]”.

 En lo pertinente, el Art. 4.01(b) de la Ley de Corporaciones, 14 LPRA see. 3561(b), establece que “[l]a junta de directores consistirá de uno o más miembros, los cuales deberán ser personas naturales”.

 Los Arts. 4.04 y 4.05 de la Ley de Corporaciones, 14 LPRA sees. 3564 y 3565, respectivamente, recogen el deber de lealtad, así como las normas asociadas con el conflicto de intereses.

 De un análisis del Art. 4.03 de la Ley de Corporaciones, 14 LPRAsec. 3563, se deduce que este recoge elementos del principio del juicio comercial {business judgment rule) desarrollado en el derecho corporativo americano, el cual libera a los oficiales y directores de responsabilidad frente a la corporación “por actuaciones que no impliquen negligencia crasa, fraude o conflicto de interés”. C.E. Díaz Olivo, Corporaciones, San Juan, Publicaciones Puertorriqueñas, 2005, pág. 109. Véase, además, L.M. Negrón Portillo, Derecho corporativo puertorriqueño, 2da ed., [s. 1.], [ed. de autor], 1996, pág. 214. Dicha norma “dispone que de existir cualquier fundamento comercial razonable para la decisión de los directores u oficiales, éstos no responderán por meros errores de juicio, aun cuando se produzcan resultados desfavorables para la corporación”. Díaz Olivo, op. cit., pág. 109. El esquema propuesto por esta doctrina está fundamentado en el deber de diligencia exigido “a los directores y oficiales para que actúen con responsabilidad, competencia, de buena fe y razonabilidad, para el beneficio y mejores intereses de la corporación”. J.F. Gierbolini Bonilla, La acción derivativa como mecanismo de control y monitoreo en Puerto Rico, 1 UPR Bus. L.J. 81, 86 (2010).

 Sobre este particular, el Art. 12.06 (14 LPRAsec. 3786) dispone lo siguiente:
“En cualquier pleito entablado por un accionista a beneficio de alguna corporación organizada con arreglo a las leyes del Estado Libre Asociado, deberá alegarse en la demanda que el demandante era accionista de la corporación cuando se efectuó la transacción impugnada, o que las acciones le fueron transferidas luego de la transacción por ministerio de ley”.

 Anteriormente hemos expresado que en la medida en que la normativa del Derecho de corporaciones de Delaware “sea persuasiva e ilustradora, y se acople a nuestra realidad, la acogeremos”. Lloréns et al. v. Arribas et al., 184 DPR 32, 51 esc. 41 (2011). Véanse, además: Herger et al. v. Calidad Vida Vecinal, 190 DPR 1007 (2014); D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905 (1993).

 La demanda del señor Rivera y del resto de los recurridos indica que, a *58 pesar de que “[e]l principal oficial ejecutivo de FirstBank y sus directores [tenían] el deber de velar por el cumplimiento de las obligaciones del Banco y de atender oportuna y adecuadamente cualquier violación cometida a esos efectos”, éstos “permitieron que FirstBank violara [su] contrato de empleo [...]”. Demanda, pág. 6, Apéndice, pág. 47.

 Los siguientes argumentos presentados por los recurridos confirman el enfoque contractual y fiduciario del litigio:
“En el caso de autos, los demandantes-recurridos instaron acción contra la Junta de Directores de FirstBank en su carácter oficial y personal, por el incumplimiento craso en el descargo de sus funciones al permitir intencional y negligentemente, con sus actos u omisiones, que se violara el contrato de empleo suscrito entre las partes [...]”. (Enfasis nuestro). Alegato en oposición a certiorari, págs. 7-8.

 Demanda, párrs. 17-18, pág. 7, Apéndice, pág. 48.

 Demanda, párr. 19, id.

 En vista de nuestra determinación, no es necesario atender el resto de los errores aducidos por los peticionarios en su recurso atinentes a la ausencia de First-Bank como parte indispensable en el pleito, así como la viabilidad de enmendar la Demanda para incluirlo como demandado.