ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LIONEL DAVID BESNIER NEUMANN<br><br>Peticionario<br><br>v.<br><br>NANCY ELIZABETH MOSQUERA LEMOS<br><br>Recurrida | TA2025CE00141 | *Certiorari* procedente del Tribunal de Primera Instancia de San Juan<br><br>Caso Núm.: SJ2025RF00377<br><br>Sobre: Divorcio-Ruptura Irreparable |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de octubre de 2025.

Comparece ante nos el Sr. Lionel David Besnier Neumann (señor Besnier Neumann o peticionario). Nos solicita la revocación de la *Sentencia Parcial* y *Resolución Interlocutoria,* emitidas por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 5 de mayo de 2025[1] y 12 de junio de 2025, respectivamente. Mediante dichos dictámenes, el TPI: 1) autorizó a las partes de epígrafe la asignación de $10,000.00 en gastos de litigio, con cargo a las ganancias netas generadas por la entidad Oceanna, LLC; 2) mantuvo el pago mensual de $2,500.00 de pensión provisional por la vigencia de la orden protectora a favor de la Sra. Nancy Elizabeth Mosquera Lemos (señora Mosquera Lemos o recurrida); y 3) autorizó la revisión de la referida pensión en aras de autorizar una pensión alimentaria adicional, con cargo a las ganancias netas generadas por la entidad Oceanna, LLC.

Por los fundamentos que expondremos, dejamos sin efecto la paralización de los procedimientos, expedimos el recurso de *certiorari* y revocamos los pronunciamientos judiciales impugnados.

---

[1] Notificada el 7 de mayo de 2025.

**I.**

La causa del título comenzó el 14 de marzo de 2025, ocasión en que el peticionario instó una *Demanda* de divorcio por ruptura irreparable de los nexos de convivencia matrimonial en contra de la parte demandada y recurrida.[2] Alegó que, el 9 de septiembre de 2021, contrajo matrimonio con la señora Mosquera Lemos. Asimismo, indicó que, antes de contraer matrimonio, suscribieron una Escritura Pública de Constitución de Capitulaciones Matrimoniales ante la Notaria Pública Jennifer López Negrón, mediante la cual excluyeron expresamente el régimen económico de la Sociedad Legal de Bienes Gananciales. Estipularon que sus bienes presentes y futuros se regirían por una Separación de Bienes absoluta. Como parte de sus alegaciones, expresó que no procrearon hijos y no adquirieron bienes de naturaleza ganancial durante el matrimonio.

En adición, el señor Besnier Neumann aseveró, que el 6 de marzo de 2025, la señora Mosquera Lemos obtuvo una *Orden Protectora,* caso número OPA-2025-052769, en virtud de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, mejor conocida como la *Ley para la Prevención e Intervención con la Violencia Doméstica* (Ley 54), 8 LPRA sec. 601 nota *et seq.*[3] Añadió que, conforme a la referida Orden, el Tribunal le impuso una pensión provisional de $2,500.00 mensuales — denominada por el demandante como *pendente lite*—, la cual continuaría pagando durante la vigencia del caso de epígrafe. A esos efectos, solicitó al foro recurrido la disolución del vínculo matrimonial existente de acuerdo con las disposiciones de la Ley Núm. 55-2020, según enmendada, mejor conocida como "*Código Civil de Puerto Rico" de 2020* (Código Civil), 31 LPRA sec. 5311 *et seq*. Posteriormente, el 14 de abril

---

[2] Véase, Apéndice del peticionario, expediente electrónico del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA), entrada núm. 1.

[3] La vigencia de esta orden de protección es de un (1) año, la cual vence el 6 de marzo de 2026. Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 9.

de 2025, el TPI señaló una vista de divorcio por videoconferencia para el 5 de mayo de 2025.[4]

El 1 de mayo de 2025, la señora Mosquera Lemos presentó su *Contestación a Demanda y Reconvención.*[5] Alegó, entre otras cosas, que entre las partes existía una comunidad de bienes y negó que la pensión concedida por la orden protectora fuese *pendente lite.* De igual forma, peticionó la disolución del vínculo matrimonial en virtud del Artículo 425 del Código Civil. También, solicitó ciertas medidas cautelares al amparo de los Artículos 447, 448, 453 y 454 del referido Código, a saber: 1) la obligación del demandante de garantizar su sustento; 2) medidas adecuadas para proteger su integridad física y emocional; 3) la suma de $10,000.00 por concepto de gastos legales; 4) $2,500.00 mensuales adicionales por concepto de pensión alimentaria; 5) el pago de $11,400.00 por concepto de renta, equivalente a seis (6) meses — $1,900.00 mensuales— como medida cautelar mientras lograba encontrar empleo; 6) el pago inmediato del 30% de las ganancias netas generada por la corporación Oceanna, LLC (Oceanna)[6] —una compañía de responsabilidad limitada doméstica con fines de lucro, organizada bajo las leyes de Puerto Rico, en la que el señor Besnier Neumann y la señora Mosquera Lemos eran "miembros con interés y/o socios"[7] en un 70% y 30%, respectivamente— desde el año 2022 al año 2024; 7) y no menos de $8,000.00 mensuales por concepto de las ganancias actuales que alegadamente le corresponden a esta de acuerdo a su participación en la entidad.

---

[4] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 7.

[5] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 8.

[6] Luego de haber examinado el portal electrónico del Departamento de Estado sobre información de corporaciones, y para propósitos de la disposición del presente recurso, destacamos que la referida compañía de responsabilidad limitada fue disuelta el 9 de mayo de 2025. Véase, https://rcp.estado.pr.gov/es/entity-information?c=413763-1511

[7] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 9.

Con respecto a la mencionada corporación, sostuvo que ambas partes excluyeron a Oceanna del régimen económico de la Separación de Bienes en la Escritura Pública de Capitulaciones Matrimoniales.[8] El 4 de mayo de 2025, la señora Mosquera Lemos presentó una *Moción Informativa*, a través de la cual notificó al tribunal la prueba que pretendía presentar en la vista de divorcio.[9] Así las cosas, el 5 de mayo de 2025 se llevó a cabo la vista de divorcio en su fondo.[10] El TPI comenzó la vista con la moción informativa presentada por esta, e hizo referencia al caso *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023). Aclaró que, en dicho caso, el Tribunal Supremo de Puerto Rico resolvió que no procedía un descubrimiento de prueba con carácter liquidatario y patrimonial en un caso de divorcio por ruptura irreparable de un matrimonio que no tienen hijos en común y otorgó capitulaciones matrimoniales con régimen económico de Separación de Bienes. El TPI expresó que, aunque tenía conocimiento sobre el otorgamiento de las capitulaciones, no tenía que entrar a atender este asunto en una vista de divorcio por la causal de ruptura irreparable. Dispuso, además, que atendería las presentes circunstancias de acuerdo con lo establecido en la precitada jurisprudencia.

Con respecto a la reclamación del 30% de las ganancias generadas por Oceanna realizada por la demandada, determinó que no se atendería en ese expediente. Discutió además la orden protectora existente a favor de la señora Mosquera Lemos, en la que se estableció una pensión de $2,500.00 al mes, y asimismo señaló que no se trataba de una pensión *pendente lite*. Ilustró que la referida pensión debería pagarse hasta la fecha de vencimiento de la orden protectora. Puntualizó que, si el señor Besnier Neumann no estaba de acuerdo con la determinación del Tribunal que emitió la orden protectora, debía presentar su reclamo ante

---

[8] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 9.
[9] *Id.*
[10] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 10.

este Foro revisor, y no así ante el Tribunal Superior. Expresó que, si la señora Mosquera Lemos entendía que la pensión de $2,500.00 no era suficiente, debía someter un memorando de derecho. También requirió a las partes someter un memorando de derecho para el asunto de la compensación de gastos legales.

El representante legal del señor Besnier Neumann trajo a la atención del TPI que la solicitud que hizo la señora Mosquera Lemos sobre la corporación, incidía sobre la liquidación de una entidad jurídica que no era parte en el pleito. Además, solicitó que la pensión mensual de $2,500.00 impuesta en la orden de protección fuese considerada como medida cautelar. Por su parte, la representante legal de la señora Mosquera Lemos sostuvo que la pensión que se estableciera debía reflejar el estilo de vida que tenían las partes, y en adición tomar en cuenta el asunto de la vivienda, pues alegó que esta no tiene dónde vivir de manera segura. Por lo tanto, arguyó que se debía considerar una aportación adicional a los $2,500.00 mensuales ya establecidos. En esta vista, el TPI le concedió un término de veinte (20) días a la señora Mosquera Lemos para que presentase un memorando de derecho, y veinte (20) días al señor Besnier Neumann para que presentase su respectiva réplica.

En esa misma fecha, y notificado a las partes el 7 de mayo de 2025, el foro de instancia emitió una *Sentencia Parcial*.[11] En ella, declaró con lugar la *Demanda* de divorcio y decretó roto y disuelto el vínculo matrimonial existente entre las partes por la causal de ruptura irreparable. Asimismo, plasmó lo discutido en la vista. Determinó que la solicitud de la demandada en la contestación a la demanda y reconvención del pago inmediato del 30% de las ganancias netas

---

[11] Aclaramos que, aunque el dictamen al que hacemos referencia lleva por nombre *Sentencia Parcial*, el TPI no concluye expresamente que no existe razón para posponer dictar sentencia sobre las reclamaciones en cuestión hasta la resolución total del pleito de epígrafe, de conformidad con la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3. Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 13.

generadas por Oceanna durante los años 2022 al 2024, no procedía a la luz de lo resuelto en *Torres González v. Zaragoza Meléndez, supra.* Concluyó que tampoco procedía atender en este pleito el reclamo del pago mínimo mensual de $8,000.00 por concepto de las ganancias actuales. Con respecto a los reclamos de la señora Mosquera Lemos sobre la suma de $10,000.00 por concepto de gastos legales, la pensión alimentaria mensual de $2,500.00 adicionales a la pensión provisional otorgada mediante la orden protectora, y el pago de seis meses de renta para un total de $11,400.00 según dispuesto en el Artículo 447 del Código Civil, le concedió un término de veinte (20) días para que ésta presentase un memorando de derecho fundamentando con las razones por las cuales procedía atender dichas reclamaciones en el presente caso.

No conteste, el 15 de mayo de 2025, el señor Besnier Neumann presentó una *Moción en Solicitud de Reconsideración a Sentencia Parcial de 6 de mayo de 2025.*[12] En síntesis, adujo que la Sala Superior del Tribunal de Primera Instancia, tenía competencia para revisar la pensión concedida en la orden protectora a favor de la demandada. Alegó en adición, que la concesión del foro de instancia a la demandada de presentar un memorando de derecho a los fines de determinar si procede la imposición de una pensión adicional a la existente, equivale a una revisión de la pensión impuesta en la orden protectora, pero a favor de la demandada. Por lo tanto, solicitó al TPI que dejase sin efecto el pago de la pensión impuesta mediante dicha orden. En atención a ello, el foro recurrido le concedió un término de diez (10) días a la parte demandada para que expresara su postura.[13]

El 27 de mayo de 2025, la señora Mosquera Lemos presentó una solicitud de reconsideración sobre la *Sentencia Parcial* precedentemente discutida, la oposición a la moción de reconsideración y el memorando

---

[12] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 14.
[13] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 15.

de derecho, según ordenado por el TPI.[14] En resumen, arguyó que el Artículo 447 del Código Civil le brinda facultad al Tribunal para fijar la contribución de cada cónyuge para atender las necesidades y las cargas de la familia durante el proceso de divorcio, incluidos los gastos del litigio. Aseveró también, que el Artículo 453 del Código Civil le permite al Tribunal imponer a una de las partes el pago de los gastos del litigio cuando la otra parte no cuente con medios suficientes para sufragarlo. Como consecuencia, solicitó al TPI que acogiese los remedios solicitados en la contestación a la demanda y la reconvención, a saber: 1) la pensión adicional a la impuesta mediante orden de protección; 2) el pago de $11,400.00 equivalente a seis (6) meses de renta; 3) el pago de $10,000.00 por gastos legales; 4) el pago mensual no menor de $8,000.00 por concepto de participación actual en las ganancias de Oceanna; y 5) el pago del 30% de las ganancias netas de la corporación durante los años 2022 al 2024.

En la oposición a la solicitud de reconsideración presentada por el demandante, la demandada argumentó, en suma, que el foro de instancia podía imponerle una pensión alimentaria proporcional a la capacidad económica de este, toda vez que no contaba con bienes que le permitiesen sustentarse. Así, pues, solicitó al foro primario que impusiera a su favor la cantidad adicional de $2,500.00 por concepto de pensión alimentaria en virtud del Artículo 454 del Código Civil. En su defecto, peticionó al TPI que celebrase una vista evidenciaria a los efectos de fijar una pensión alimentaria proporcional a la capacidad económica del señor Besnier Neumann. Por otra parte, la señora Mosquera Lemos planteó en su memorando de Derecho que, en resumen, conforme a los Artículos 445, 447, 448, 453, 454 y 459 del Código Civil, el TPI tiene la facultad de dictar medidas cautelares provisionales que garanticen la protección integral de ella. En atención a lo esbozado, solicitó al foro

---

[14] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 16.

primario que concediese las medidas cautelares provisionales que ya hemos discutido a cabalidad. El 30 de mayo de 2025, el señor Besnier Neumann presentó una réplica a la oposición de la solicitud de reconsideración y memorando de derecho.[15]

El 12 de junio de 2025, el TPI emitió una *Resolución Interlocutoria* en la que dispuso lo siguiente:

> Teniendo el beneficio de la comparecencia de ambas partes resolvemos autorizar a ambas partes la asignaci[ó]n de hasta $10,000 en gastos de litigio a ser asignados de las ganancias netas generadas por Oceanna LLC. As[í] tambi[é]n resolvemos mantener la asignaci[ó]n del pago mensual de $2,500 en favor de la Sra. Mosquera por la vigencia de la orden de protecci[ó]n expedida. En cuanto a la solicitud de la Sra. Mosquera de asignarle una pensi[ó]n alimentaria mensual adicional a la de $2,500, esta deber[á] identificar la suma espec[í]fica reclamada y reconocer que la misma, de ser otorgada, proveer[á] de su participaci[ó]n del 30% de las ganancias netas generadas por Oceanna LLC. T[é]rmino de 10 d[í]as para presentar dicha informaci[ó]n. En cuanto al pago de renta solicitado se decreta sin lugar.[16]

En lo que nos concierne, el 18 de junio de 2025, el señor Besnier Neumann presentó una *Moción en Solicitud de Aclaración de Resolución Interlocutoria de 12 de Junio de 2025 y en Solicitud de Determinaciones de Hecho y de Derecho*.[17] Luego, el 20 de junio de 2025, el TPI emitió otra *Resolución Interlocutoria* a través de la cual aclaró ciertos aspectos de la *Resolución Interlocutoria* emitida el 12 de junio de 2025, según solicitado por el demandante.[18] Después, el 23 de junio de 2025, la señora Mosquera Lemos presentó una *Moción en Cumplimiento de Orden* en la que acreditó al TPI haber provisto la información requerida por este en la *Resolución Interlocutoria* del 12 de junio de 2025.[19]

Posteriormente, el 25 de junio de 2025, el señor Besnier Neumann presentó una *Segunda Moción en Solicitud de Determinaciones de Hecho*

---

[15] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 17.
[16] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 19.
[17] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 20.
[18] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 21.
[19] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 22.

*y de Derecho y en Solicitud de Reconsideración a Orden de 23 de Junio de 2025 y de Reconsideración a Resoluciones Interlocutorias de 12 y 20 de Junio de 2025.*[20] En lo pertinente, alegó que la determinación del foro recurrido de imponer gastos legales y una pensión alimentaria con cargo a la participación de la demandada en Oceanna —entidad que no es una parte en el caso de epígrafe—, no está sustentada en prueba alguna y no procede conforme a derecho. Arguyó adicionalmente, que la señora Mosquera Lemos no es accionista en la aludida corporación, dado que lo estipulado en las Capitulaciones Matrimoniales fue el derecho de la demandada a recibir el 30% de las ganancias de Oceanna durante la vigencia del matrimonio.

De acuerdo con las Capitulaciones Matrimoniales, el negocio se regiría conforme a lo acordado en los documentos o reglamentos de la corporación. Adujo que, todo lo relacionado a la participación de la demandada en Oceanna y "la adjudicación de cualquier cantidad en concepto de pensión alimenticia y como adelanto de su participación, son de carácter liquidatorio y por tanto no tienen cabida en un pleito de divorcio por ruptura irreparable".[21] También aseveró ser contraria a derecho la imposición de gastos legales como medida cautelar, particularmente cuando en esta etapa de los procedimientos ya había sido decretado el divorcio. A esos efectos, solicitó al foro recurrido que reconsiderase varios dictámenes, entre ellos, las resoluciones interlocutorias emitidas el 12 y 20 de junio de 2025.

Entonces, el 25 de junio de 2025, el TPI emitió una *Orden* en la que declaró Sin Lugar la solicitud de determinaciones de hecho y de derecho, y reconsideración presentada por el señor Besnier Neumann.[22] Puntualizó lo siguiente:

> Sin lugar. El tribunal no requiere realizar determinaciones de hechos adicionales para adjudicar en cuanto a las

---

[20] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 24.

[21] *Id.*

[22] Véase, Apéndice del peticionario, expediente electrónico del caso en el SUMAC-TA, entrada núm. 25.

medidas cautelares solicitadas, pues precisamente emitimos Sentencia Parcial y no total ya que las partes debían poner en posición al tribunal si procede la imposición de dichas medidas. En aras de resolver las medidas cautelares solicitadas, emitimos órdenes con términos de vencimiento. Al presente, aun no se ha puesto al tribunal en posición de adjudicar si proceden la imposición de pensión alimentaria adicional, al amparo del artículo 454 del Código Civil. Para esta en posición de resolver si la Sra. Mosquera no cuenta con recursos económicos suficientes para su sustento durante el proceso de divorcio, los cuales fueron oportunamente solicitados, más no así probados aun, hemos requerido que así lo evidencie.

Acorde a la escritura de capitulaciones matrimoniales presentada por la parte demandante en la entrada uno de este expediente establece ["]la existencia de un negocio que las partes mantienen en conjunto bajo el nombre de Oceanna LLC, en donde ambos son miembros con interés y[/]o socios en un 70% correspondiente a el Sr. Besnier y un 30% correspondiente a la Sra. Mosquera["], es la intención del tribunal conocer si existen suficientes ingresos propios por parte de la Sra. Mosquera en aras de determinar su necesidad. No es la intención del tribunal evaluar la capacidad de pago de Oceanna, sino conocer si los ingresos de la Sra. Mosquera son suficientes o, conforme al artículo 454, no cuenta con bienes propios suficiente.

En cuanto a los demás asuntos presentados en esta moción se resuelven sin lugar.[23]

Inconforme, el señor Besnier Neumann acudió oportunamente ante nos y planteó la comisión de los siguientes errores:

ERRÓ EL HONORABLE TRIBUNAL SUPERIOR DE SAN JUAN AL DENEGAR POR FALTA DE COMPETENCIA LA SOLICITUD DE REVISIÓN DEL PETICIONARIO DE UN DICTAMEN DEL TRIBUNAL MUNICIPAL EN EL QUE SE LE IMPONE UNA PENSIÓN ALIMENTICIA EN VIRTUD DE LA LEY 54, TODO ELLO EN UN CLARO ABUSO DE DISCRECIÓN Y EN ABIERTA VIOLACIÓN AL DEBIDO PROCESO DE LEY Y A LAS DISPOSICIONES DE LA PROPIA LEY 54.

ERRÓ EL HONORABLE TRIBUNAL SUPERIOR DE SAN JUAN AL DICTAMINAR QUE TODA VEZ QUE EL TRIBUNAL MUNICIPAL NO CONCEDIÓ "GASTOS LEGALES" AL IMPONER AL PETICIONARIO UNA PENSIÓN ALIMENTICIA BAJO LA LEY 54, PROCEDE LA IMPOSICIÓN DE LOS MISMOS COMO MEDIDA CAUTELAR LUEGO DE DECRETADO EL DIVORCIO, SUMA QUE SERÁ SATISFECHA DE LAS GANANCIAS NETAS GENERADAS POR UNA ENTIDAD JURÍDICA (OCEANNA, LLC) QUE NO ES PARTE EN ESTE PLEITO, TODO ELLO EN UN CLARO ABUSO DE DISCRECIÓN, EN ABIERTA VIOLACIÓN AL DEBIDO PROCESO DE LEY Y SIN JURISDICCIÓN PARA ASÍ ACTUAR.

---

[23] *Id.*

ERRÓ EL HONORABLE TRIBUNAL SUPERIOR DE SAN JUAN AL DICTAMINAR QUE PROCEDE LA REVISIÓN DE LA PENSIÓN ALIMENTICIA IMPUESTA POR EL TRIBUNAL MUNICIPAL AL AMPARO DE LA LEY 54 A LOS ÚNICOS FINES DE DETERMINAR SI PROCEDE IMPONER EL PAGO DE UNA SUMA ADICIONAL COMO PENSIÓN PENDENTE LITE LUEGO DE DECRETADO EL DIVORICO, CUYO PAGO PROVENDRÍA DE LAS GANANCIAS NETAS GENERADAS POR UNA ENTIDAD JURÍDICA (OCEANNA, LLC) QUE NO ES PARTE EN ESTE PLEITO, TODO ELLO EN UN CLARO ABUSO DE DISCRECIÓN, EN ABIERTA VIOLACIÓN AL DEBIDO PROCESO DE LEY Y SIN JURISDICCIÒN PARA ASÍ ACTUAR.

El 11 de agosto de 2025, la señora Mosquera Lemos instó su *Oposición a Certiorari*. Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II.

## A.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, **el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional**. *García v. Padró, supra*. El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera..." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de

otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago, supra.*

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita taxativamente las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En su parte pertinente, la norma dispone que, por excepción, estamos autorizados a expedir un recurso de *certiorari* en los **casos de relaciones de familia**. *Id.* Añade la norma procesal que, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". *Id.*

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40, *Criterios para la expedición del auto de certiorari*, del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025).

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) **Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho**.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) **Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia**. (Énfasis nuestro).

Claro está, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Bastardillas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

**B.**

La jurisdicción se refiere al "(...)poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias". *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022). Para poder adjudicar una controversia, el tribunal debe tener jurisdicción sobre la materia y las partes litigiosas. *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394 (2022) citando a *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 600 (2021). El Tribunal Supremo ha expresado que los tribunales deben ser guardianes de su jurisdicción y no poseen discreción para atribuirse o asumir jurisdicción donde no la tienen. *Pueblo v. Ríos Nieves, supra*; *Pérez Soto v. Cantera Pérez, Inc. et al.*, 188 DPR 98, 104–105 (2013).

De igual forma, la falta de jurisdicción no puede ser subsanada por acuerdo entre las partes. *Pueblo v. Ríos Nieves, supra*; *Pérez Soto v. Cantera Pérez, Inc. et al., supra*. Si un tribunal carece de jurisdicción sobre el asunto ante su consideración, "solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia". *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652 (2014). De lo contrario, si un tribunal dicta una sentencia cuando carece jurisdicción sobre las partes o sobre la materia, emite un dictamen *ultra vires. Pueblo v. Ríos Nieves, supra*; *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007).

Por otro lado, la jurisdicción sobre la persona es **el poder del tribunal para subordinar a una parte a su decisión**. (Énfasis nuestro).

*Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012). En otras palabras, es la **autoridad de un tribunal para emitir una decisión vinculante para las partes, declarando así sus respectivos derechos y obligaciones**. (Énfasis nuestro). *Id.*

### C.

En lo pertinente a la controversia ante nos, la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, mejor conocida como la *Ley para la Prevención e Intervención con la Violencia Doméstica* (Ley 54), 8 LPRA sec. 601 nota *et seq.*, regula en su Artículo 2.2 la competencia de los foros judiciales para revisar las órdenes de protección emitidas en virtud de este cuerpo estatutario. El precitado artículo establece que "[t]oda orden de protección podrá ser revisada, en los casos apropiados, en cualquier sala de superior jerarquía y en aquellas instancias pertinentes en las Salas de Relaciones de Familia". Art. 2.2 de la Ley 54, 8 LPRA sec. 622.

Ahora bien, en *Pizarro v. Nicot*, 151 DPR 944 (2000), el Tribunal Supremo de Puerto Rico resolvió que la "sala de superior jerarquía" a la que hace referencia el Artículo 2.2 de la Ley 54 es la de este Foro revisor, Tribunal de Apelaciones. *Id.*, pág. 956. Lo anterior se debe a que la Ley Núm. 201-2003, según enmendada, mejor conocida como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003* (Ley de la Judicatura), capacita a este Tribunal para atender esos asuntos mediante recurso de *certiorari*. Art. 4.006 de la Ley de la Judicatura, 4 LPRA sec. 24y.

### D.

La Ley Núm. 55-2020, según enmendada, mejor conocida como "*Código Civil de Puerto Rico*" de 2020 (Código Civil), 31 LPRA sec. 5311 *et seq.*, regula en su Libro Segundo, Títulos IV y V todo lo relacionado a las instituciones familiares. Específicamente la disolución del matrimonio, medidas provisionales y el régimen económico matrimonial.

Nuestro máximo Foro ha establecido que el matrimonio tiene alcances jurídicos bidimensionales, toda vez que surte efectos tanto personales como patrimoniales. *Matos Rivera v. Soler Ortiz*, 213 DPR 1044, 1053 (2024). Como consecuencia, las personas que deseen contraer matrimonio pueden escoger el régimen económico que regirá durante este mediante capitulaciones matrimoniales. *Id.* El Artículo 498 del Código Civil establece que "[l]os cónyuges pueden regir sus relaciones personales y económicas, así como la naturaleza, el manejo, el disfrute y el destino de los bienes propios y comunes, mediante capitulaciones matrimoniales". Art. 498 del Cód. Civil, 31 LPRA sec. 6931. Como son un contrato, los cónyuges o futuros cónyuges pueden pactar las cláusulas y condiciones que estimen convenientes, siempre que no sean contrarias a la ley, la moral o al orden público. *Id.*

Por otro lado, el Artículo 499 del cuerpo legislativo bajo discusión establece los requisitos de forma de las capitulaciones, a saber: 1) deben otorgarse mediante escritura pública; y 2) deben constar inscritas en el Registro de Capitulaciones Matrimoniales para que surtan efectos contra terceros. Art. 499 del Cód. Civil, 31 LPRA sec. 6932. Estas formalidades aplican a las modificaciones posteriores que se realicen en ellas. *Id.* A la luz de lo anterior, hay diferentes regímenes económicos disponibles al momento de otorgar unas capitulaciones matrimoniales. Entre ellos, se encuentra el régimen de separación de bienes. El Artículo 546 del Código Civil preceptúa lo siguiente:

> Los cónyuges pueden acordar libremente el régimen de separación de bienes antes de contraer matrimonio o durante su vigencia.
>
> El régimen de separación se rige por las cláusulas convenidas por los cónyuges en capitulaciones matrimoniales, siempre que no sean contrarias a la ley, la moral y al orden público.
>
> La separación de bienes entre los cónyuges no perjudica los derechos que los acreedores hayan adquirido sobre los bienes gananciales bajo el régimen económico de la sociedad de gananciales. Art. 546 del Cód. Civil, 31 LPRA sec. 7031.

**E.**

En cuanto a la disolución del matrimonio, el Código Civil establece que puede ocurrir de dos (2) formas: 1) por la muerte o declaración de muerte presunta de uno de los cónyuges; o 2) por el divorcio. Art. 417 del Cód. Civil, 31 LPRA sec. 6741; *Torres González v. Zaragoza Meléndez, supra.* La disolución del matrimonio por divorcio puede, a su vez, declararse de dos (2) maneras también: 1) mediante sentencia judicial; o 2) por escritura pública. Art. 423 del Cód. Civil, 31 LPRA sec. 6761; *Torres González v. Zaragoza Meléndez, supra.* Si el divorcio se realiza mediante sentencia judicial, este puede solicitarse al tribunal a través de una petición conjunta por consentimiento mutuo, una petición conjunta por ruptura irreparable de los nexos de convivencia matrimonial, o una **petición individual de divorcio por ruptura irreparable de los nexos de convivencia matrimonial**. (Énfasis nuestro). Art. 425 del Cód. Civil, 31 LPRA sec. 6772; *Torres González v. Zaragoza Meléndez, supra.*

En atención a los asuntos del caso que nos ocupa, el Código Civil contempla la disposición de medidas provisionales en un proceso de petición de divorcio. El Tribunal Supremo de Puerto Rico, citando al profesor Miguel R. Garay Aubán, ha expresado lo siguiente respecto a las medidas provisionales:

> [...] El proceso de divorcio crea un estado transitorio que requiere unas garantías mínimas de protección para las partes y su patrimonio, las cuales son viables mediante medidas provisionales. Una de las características de estas medidas es que son modificables cuando ocurra un cambio sustancial en las circunstancias que amerite la intervención del tribunal. El tribunal siempre retendrá la jurisdicción y, aun cuando la sentencia de divorcio se apele, podrá modificar las medidas adoptadas. *Torres González v. Zaragoza Meléndez, supra*, pág. 840 citando a M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, San Juan, Ed. SITUM, 2020, T. I, pág. 297.

Así pues, el Artículo 444 del Código Civil propone que, una vez instada la petición individual de divorcio, los cónyuges pueden acordar aquellas medidas provisionales que regirán "sus relaciones personales, la estabilidad económica de la familia y los asuntos que afectan

significativamente a los hijos durante el proceso". Art. 444 del Cód. Civil, 31 LPRA sec. 6791. El tribunal puede aprobar las medidas acordadas o modificarlas en cualquier etapa del proceso en aras de salvaguardar el bienestar de los cónyuges y miembros de la familia. *Id.* En adición, el Artículo 445 establece que en caso de que los cónyuges no acuerden medidas provisionales, el tribunal puede establecer las medidas más urgentes y necesarias de forma sumaria. Art. 445 del Cód. Civil, 31 LPRA sec. 6792. Referente a lo anterior, nuestro más alto Foro ha aclarado lo siguiente, citando nuevamente al profesor Garay Aubán:

> El propósito de este artículo es darle la oportunidad a los cónyuges para que acuerden dentro de un plazo razonable la manera en que desarrollarán sus relaciones y la forma en que organizarán sus asuntos económicos **durante el trámite procesal del divorcio**. El tiempo de duración de la negociación debe ser prudente, ya que algunos acuerdos, dada la naturaleza del asunto, tienen que tomarse de manera diligente para que no afecten a las partes ni a su patrimonio. En este supuesto, el tribunal podrá disponer, de manera sumaria, lo que estime necesario para atender tales asuntos con la premura correspondiente. El artículo también permite utilizar los métodos alternos para la estipulación de las medidas provisionales. (Énfasis nuestro). *Torres González v. Zaragoza Meléndez, supra*, pág. 841 citando a M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, San Juan, Ed. SITUM, 2020, T. I, pág. 298.

En lo que nos atañe, el Artículo 454 del precitado cuerpo estatutario, regula la pensión alimentaria provisional de un cónyuge o alimentos *pendente lite*. Dispone que:

> El tribunal puede imponer el pago de una pensión alimentaria al cónyuge que tiene bienes propios en beneficio del que no cuenta con recursos económicos suficientes para su sustento **durante el proceso. En este caso, la cuantía fijada debe ser proporcional a la capacidad económica del cónyuge a quien se impone la pensión y conforme a la posición social de la familia. La pensión debe cubrir las necesidades apremiantes y esenciales del cónyuge que la reclama y los gastos del litigio**. El cónyuge alimentante no tiene derecho a reclamar la restitución de lo pagado por ambos conceptos. (Énfasis nuestro). Art. 454 del Cód. Civil, 31 LPRA sec. 6801.

Las medidas provisionales solo se modificarán judicialmente cuando las circunstancias que las originaron se alteran de manera sustancial o cuando no son apropiadas para atender los intereses protegidos. Art. 456 del Cód. Civil, 31 LPRA sec. 6803. Estas medidas estarán vigentes **hasta**

**que la sentencia de divorcio advenga firme, siempre que el tribunal no disponga otra cosa**. (Énfasis nuestro). Art. 457 del Cód. Civil, 31 LPRA sec. 6804. Véase, *Toppel v. Toppel*, 114 DPR 16, 18 (1983); *Castrillo v. Palmer,* 102 DPR 460, 461 (1974).

**F.**

La Ley Núm. 164-2009, según enmendada, mejor conocida como la *Ley General de Corporaciones* (Ley General de Corporaciones), 14 LPRA sec. 3501 *et seq.*, ha sido definida como "el estatuto especial por virtud del cual se deben atender los cuestionamientos relativos a la existencia y vida jurídica de las corporaciones privadas". *Eagle Security Police, Inc. v Dorado,* 211 DPR 70, 85 (2023) citando a *Dorado del Mar v. Weber et als.*, 203 DPR 31, 45 (2019). El Tribunal Supremo de Puerto Rico ha pronunciado que una corporación es "una ficción jurídica creada por el Estado que podrá realizar aquellas transacciones lícitas autorizadas por ley y promover o llevar a cabo cualquier objeto o propósito legítimo al amparo de la Ley General de Corporaciones". *Peguero y otros v. Hernández Pellot,* 139 DPR 487, 502 (1995). Vale destacar que es además, una persona jurídica que "goza de una personalidad independiente a la de sus accionistas, directores y oficiales. Por ende, existen distinciones legales entre la corporación y las personas naturales que forman parte de ella". *Id.*

El nacimiento de una corporación está regulado por los Artículos 1.03 y 1.05 de la Ley General de Corporaciones. La norma establecida es que, una corporación tiene su propia personalidad jurídica y patrimonio, distintos y separados a los de sus accionistas, indistintamente de que estos sean personas naturales o jurídicas. *D.A.Co. v. Alturas Fl. Dev. Corp. y otro*, 132 DPR 905 (1993). El profesor Carlos Díaz Olivo explica que el Artículo 1.03 de esta ley prescribe un procedimiento uniforme para presentar documentos ante el Departamento de Estado que consta de cuatro (4) etapas, a saber: la otorgación, la certificación, la radicación y el registro. C.E. Díaz Olivo, *Corporaciones: Tratado sobre derecho*

*corporativo*, 2da ed. Rev., Colombia, Ed. AlmaForte, 2018, pág. 97; Véase, Art. 1.03 de la Ley General de Corporaciones, 14 LPRA sec. 3503.

Una vez se cumplen con estos requisitos o etapas, "el Estado está en posición de emitir el certificado de incorporación, el cual es una especie de *certificado de nacimiento* que evidencia y oficializa la existencia de la persona jurídica que es la corporación". (Bastardillas en el original). Díaz Olivo, *op. cit.*, págs. 103-104. Así, el Artículo 1.05 decreta con precisión el momento en que comienza la personalidad jurídica de la corporación. Establece que:

> A. Otorgado y radicado el certificado de incorporación, según lo dispuesto en el inciso (D) del Artículo 1.03 de esta Ley y pagados los derechos requeridos por ley, la persona o las personas que de tal modo se asociaren, sus sucesores y sus cesionarios, constituirán, a partir de la fecha de dicha radicación, o de haberse establecido en el certificado de incorporación, desde una fecha posterior que no exceda de noventa (90) días, una entidad corporativa con el nombre que aparezca en el certificado, sujeta a disolución según se dispone en esta Ley. Art. 1.05 (A) de la Ley General de Corporaciones, 14 LPRA sec. 3505.

Ahora bien, en lo pertinente, la compañía de responsabilidad limitada (CRL o LLC), es "una entidad no incorporada **con personalidad jurídica propia separada de los miembros que las constituyen**, que puede recibir el tratamiento de la sociedad para efectos contributivos, y que se organiza al amparo del Capítulo XIX de la *Ley General de Corporaciones de 2009*". (Énfasis nuestro y bastardillas en el original). Díaz Olivo, *op. cit.*, pág. 583. En las CRL, "la relación entre los miembros y la gerencia **está regulada primordialmente por el acuerdo entre ellos y en ausencia de acuerdo, por las disposiciones de la Ley**". (Énfasis nuestro). *Id.*, pág. 60. El Artículo 19.12 de la Ley de Corporaciones estatuye que, para poder formar una CRL, una o más personas autorizadas deberán otorgar un certificado de organización. Art. 19.12 de la Ley General de Corporaciones, 14 LPRA sec. 3962. Este Artículo aclara que el otorgamiento, certificación, radicación y registro del certificado de organización se llevará a cabo según los términos y

requisitos dispuestos en la Ley para las corporaciones, precedentemente discutidos. *Id.*

Una CRL durará por el término dispuesto en el contrato de la compañía. Art. 19.47 de la Ley General de Corporaciones, 14 LPRA sec. 3997. Sin embargo, si ninguna fecha ha sido establecida, tendrá existencia perpetua. *Id.* La Ley de Corporaciones reconoce cuatro (4) causales para su disolución: 1) en el contrato de la compañía se fija un término de tiempo específico de existencia y ese momento se alcanza; 2) ocurre algún evento dispuesto en el contrato de la CRL; 3) si los miembros acuerdan su disolución por escrito; y 4) en cualquier momento que la CRL no tenga miembros. Art. 19.47 de la Ley General de Corporaciones, 14 LPRA sec. 3997; Díaz Olivo, *op. cit.*, págs. 604-605. Dicho esto, cabe destacar que el Artículo 9.08 de la Ley de Corporaciones extiende la personalidad jurídica de una entidad por tres (3) años luego de su disolución. Díaz Olivo, *op. cit.*, pág. 388. Así, pues:

> Toda corporación que se extinga por limitación propia o que por otro modo se disuelva, continuará como cuerpo corporativo por un plazo de tres (3) años a partir de la fecha de extinción o de disolución o por cualquier plazo mayor que el Tribunal de Primera Instancia (Sala Superior) en el ejercicio de su discreción disponga a los efectos de llevar adelante los pleitos entablados por la corporación y de proseguir con la defensa de los pleitos entablados contra ella, ya sean civiles, criminales o administrativos, así como a los efectos de liquidar y terminar el negocio, de cumplir con sus obligaciones y de distribuir a los accionistas los activos restantes. No podrá continuar la personalidad jurídica con el propósito de continuar los negocios para los cuales se creó dicha corporación.
>
> Respecto a cualquier acción, pleito o procedimiento entablado o instituido por la corporación o contra ella, antes de su extinción o dentro de los tres (3) años siguientes a su extinción o disolución, la corporación continuará como entidad corporativa después del plazo de los tres (3) años y hasta que se ejecuten totalmente cualesquiera sentencias, órdenes o decretos respecto a las acciones, pleitos o procedimientos antes expresados, sin la necesidad de ninguna disposición especial a tal efecto por parte del Tribunal de Primera Instancia (Sala Superior). Art. 9.08 de la Ley General de Corporaciones, 14 LPRA sec. 3708

**III.**

Como cuestión de umbral, sabido es que este Foro revisor tiene discreción para expedir o denegar un recurso de *certiorari* interlocutorio. Para ello, ejercemos un examen objetivo a base de la Regla 52.1 de Procedimiento Civil, *supra,* y otro subjetivo, partiendo de los criterios consignados en la Regla 40 de nuestra reglamentación, *supra.* En armonía con las referidas normas, acordamos expedir el auto de *certiorari* del epígrafe, al justipreciar que la controversia presentada ante nuestra consideración amerita una resolución en sus méritos.

En la causa presente el peticionario alega como primer señalamiento de error, que el TPI abusó de su discreción al denegar revisar por falta de competencia, la pensión alimentaria de $2,500.00 mensuales impuesta mediante la orden de protección emitida el 6 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Municipal de San Juan. Por el contrario, la recurrida arguye, en síntesis, que el foro adecuado para revisar las órdenes de protección emitidas al amparo de la Ley 54, *supra,* lo es el Tribunal de Apelaciones.

No le asiste la razón al peticionario. Según discutido en el desglose del derecho, las órdenes de protección emitidas al amparo de la Ley 54, *supra,* son revisables ante este Tribunal de Apelaciones, no ante el Tribunal Superior. Por lo tanto, de acuerdo con la norma jurisprudencial aplicable, es este Foro intermedio quien tiene competencia para revisar la orden de protección en cuestión. Lo anterior, en observancia con las normas aplicables al recurso discrecional de *certiorari.*

Como segundo y tercer señalamiento de error, el peticionario aduce que el TPI incidió: 1) al haber concedido gastos legales como medida provisional, con cargo a las ganancias netas generadas por Oceanna; y 2) al haber establecido revisar la pensión alimentaria impuesta en la orden de protección, a los fines de determinar si procede imponer una pensión adicional como pensión *pendente lite,* luego de haberse decretado el divorcio y con cargo a las ganancias netas

generadas por Oceanna. Adelantamos que procederemos a discutir los señalamientos de error en conjunto por su relación intrínseca.

En cambio, la recurrida sostiene, a modo de resumen, que las disposiciones del Código Civil, *supra*, que regulan todo lo relacionado a las medidas provisionales en los trámites de divorcio ante un tribunal, facultan al foro sentenciador a establecer las medidas urgentes y necesarias para proteger a las partes y sus patrimonios, y adoptar aquellas medidas para atender las necesidades especiales de cualquiera de los cónyuges o miembros de la familia que no tengan recursos suficientes, o cuando la naturaleza de sus únicos medios disponibles no permitan una distribución conjunta e igualitaria de las ganancias. También aduce que las aludidas disposiciones autorizan cualquier otra medida que proteja la integridad física y emocional de los cónyuges.

Le asiste la razón al peticionario. Debemos destacar en primer lugar que, según ya dijimos, la norma establecida contempla la imposición de medidas provisionales en un procedimiento de petición individual de divorcio, tales como gastos del litigio o pensión *pendente lite*. Además, aunque la vigencia de las medidas provisionales dictadas durante el trámite del divorcio está subordinada a que la sentencia de divorcio advenga final y firme, las precitadas disposiciones del Código Civil, *supra*, admiten que el foro sentenciador, a su discreción, disponga algo distinto. Ahora bien, lo anterior no puede ser a expensas de una persona, natural o jurídica, que no sea parte del pleito.

Se desprende del expediente ante nuestra consideración que el TPI asignó, tanto los gastos del litigio como la potencial pensión alimentaria adicional a la impuesta en la orden de protección, con cargo a las ganancias netas generadas por Oceanna, entidad que no es parte en el caso de epígrafe. Es de vital importancia recordar que las CRL tienen personalidad jurídica propia y separada de la de sus dueños. Para que el TPI pudiese vincular o subordinar a Oceanna en sus decisiones, debería tener jurisdicción sobre su persona, pero no la tiene. Debemos subrayar

que, cuando un foro inferior emite un dictamen en el que no tiene jurisdicción, en este caso, sobre la persona, es *ultra vires*. En la alternativa y en caso de entenderlo necesario, el TPI podía imponer dichas medidas provisionales, pero a proporción de las capacidades económicas del cónyuge al que se le impusiera, en este caso el señor Besnier Neumann.

A esto debemos añadir que, como indicáramos en la nota al calce número seis (6) de esta *Sentencia,* Oceanna quedó disuelta el 9 de mayo de 2025. Todo lo relacionado a la liquidación de la entidad, así como las reclamaciones pendientes o futuras, deben llevarse a cabo en una acción distinta y separada a la de divorcio, y dentro del término de tres (3) años a partir de su disolución, de acuerdo con las disposiciones estatutarias aplicables antes citadas.

Luego de un análisis sosegado del expediente judicial y los escritos presentados, concluimos que el foro *a quo* cometió el segundo y tercer señalamiento de error. Abusó de su discreción al vincular en sus dictámenes a Oceanna, una entidad jurídica que no es parte en el caso ante nos.

**IV.**

Por las razones antes expuestas, dejamos sin efecto la paralización de los procedimientos, expedimos el auto de *certiorari* y revocamos los pronunciamientos judiciales recurridos. Devolvemos el caso al foro de instancia para la continuación de los procedimientos, conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones